(No. 14458.—Judgment affirmed as to Sponagel.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAY J. MARTIN and CLARENCE SPONAGEL, Plaintiffs in Error.

*Opinion filed April 19, 1922—Rehearing as to Martin allowed June 8, 1922.*

1. CRIMINAL LAW—*reasonable doubt is not raised merely because testimony is conflicting.* While the evidence, in order to justify a conviction, must be sufficient to remove all reasonable doubt and create an abiding conviction of the defendant's guilt, yet a well founded and reasonable doubt is not necessarily raised because the testimony is conflicting, and it is the province of the jury to weigh the evidence and determine the credibility of the witnesses.

2. SAME—*proof of alibi must be sufficient to raise a reasonable doubt.* The question of alibi is one of fact, and proof of that defense must be of such a character as, considered in connection with all the other evidence, is sufficient to create in the minds of the jury a reasonable doubt of the defendant's guilt.

3. SAME—*Parole act is valid.* The Parole act, providing for indeterminate sentences, is not unconstitutional. (*People* v. *Doras,* 290 Ill. 188, and *People* v. *O'Donnell,* 291 id. 178, followed.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

LEWIS A. HAUSCHILD, (THOMAS E. SWANSON, of counsel,) for plaintiff in error Ray J. Martin.

ELWYN E. LONG, for plaintiff in error C. Sponagel.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Per CURIAM: Ray J. Martin and Clarence Sponagel (hereafter called defendants) were convicted of robbing Elof Lindberg of his automobile, watch and chain and overcoat in Chicago the night of May 14, 1921. Both

were sentenced to an indeterminate term in the penitentiary and have sued out this writ of error to review the judgment.

Lindberg was driving home in his car about 10:30 o'clock the night of May 14, 1921. He drove on Robey street, and after passing the corner of Berwyn street he turned west on that street. He testified he noticed a man standing at the southeast corner of Robey and Berwyn streets and thought he recognized him as an acquaintance and came near saying good evening as he passed him. The witness drove on to the grocery store of Carl Allen, an acquaintance, got out of his car and went in the store. The two men, Lindberg and Allen, came out of the store and got in the car and started to drive away when two men came up to the car, one on each side, and climbed into the back seat of the car. After they got in Allen jumped out. One of the men in the rear seat put a gun against Lindberg, commanded him to put his hands up, and inquired if he wanted to get shot. Lindberg did not see the man who said that because he was afraid to look back. The men told him to drive south, and when he had driven about one hundred feet they ordered him to stop and pick up another man, who came from the southeast corner of Robey and Berwyn streets. That man was Sponagel. He got in the front seat by the side of Lindberg, held a gun against his side and told him to keep on driving down Robey street. A man in the rear asked witness where his dough was, and he replied he had nothing. They went through his pockets, took his watch and chain, his overcoat and a lot of papers. At Sponagel's command he drove down Robey street to Ainslie street and turned west on that street. Sponagel said he would drive, and took the wheel. When they reached Oakley street Sponagel said, "Let's take him down an alley and look him over," but they did not do it. They told him to get out of the car. He did so and they drove off with it. The car was worth $650, the overcoat $30 and the watch and chain $50. Witness next saw his car May 16 at the

Hyde Park police station, his overcoat at the Chicago Avenue police station, and parts of his watch chain at the same places. He never saw his watch again. Lindberg testified that when he saw the two men who got in the rear of his car come out of the doorway the man on the right-hand side had on a light top-coat and a cap; that when they made a rush for the car he suspected a hold-up, took his pocket-book out of his pocket and dropped it on the car floor and kept his feet on it; that when they told him to get out of the car he pushed the pocket-book out and stepped on it. He was made to hold up his hands and two guns were pointed at him from the rear seat.

Allen testified he got in the car with Lindberg and just as it started two men came out of the vestibule of a house next to the store. They came to the car and one of them said to them, "What is your hurry?" and as Lindberg turned the machine around they came up to the car, one on each side, jumped on the running-board and climbed in the rear. One of them held a gun behind witness' shoulder and said, "Don't be flirting with the undertaker." Witness had about $600 in his pocket. He jumped out of the car and ran north. The car was going south.

George Carlson testified he and his wife were walking on Robey street just north of Berwyn at the time the hold-up occurred. They saw two men in the vestibule of an apartment building just north of Berwyn. The vestibule was lighted up. The men appeared to be peeping north at the Carlsons, who were walking south. His wife remarked about them. Witness said he got a good look at them. After he had passed the two men he heard a car start up, turned around and saw two men come out of the doorway he had passed and get in the car. The car turned around, and as it did so he saw Allen jump out of it. Witness saw a big, heavy-set man, whom he identified as Sponagel, standing near the corner of Berwyn and Robey streets looking at the automobile. As it came south

he came out in the street in front of it, pulled a gun, waved it in the air and the car stopped. He got in the car and it drove on south. Mrs. Carlson testified to substantially the same facts. She identified Sponagel as the man who ran out in front of the automobile, waved a revolver in the air and got in the car. She saw Allen get out of the car and run away. She and her husband afterwards saw Sponagel at the county jail.

Alfred Schutz, a police officer, testified that he went to Sponagel's house, 1324 North Clark street, at 7:15 P. M., May 15, and arrested him. Sponagel ran out of the rear of the house into the alley. The officer followed him and called to him to halt, and Sponagel reached back to his hip pocket, threw a pistol in the air and the officer arrested him. He searched the house, found an overcoat, which he produced and Lindberg identified as his, and found a gun in the pocket. The overcoat was hanging on a bed in Sponagel's room.

On behalf of Sponagel, John Maynard testified that he was employed by the Consumers Ice Company. He knew Sponagel, and on the 14th day of May was at his house, 1324 North Clark street, about nine o'clock in the evening. He went to employ Sponagel to drive an ice wagon. They remained at Sponagel's house about twenty minutes, then went to State street and Grand avenue to a pool room. John Callahan was with them. Witness left Sponagel at the pool room. He testified he knew Sponagel's general reputation for honesty and integrity in the neighborhood where he lived prior to the indictment and that it was good. The witness lived at 26 East Twenty-third street and Sponagel lived at 1324 North Clark street. He testified they were at the pool room till about eleven o'clock. Sponagel agreed to go to work at the job witness wanted him for, on Monday morning, but did not do so.

Sponagel testified in his own behalf and denied he was at the place where the hold-up occurred or that he knew

anything about it.  He testified he was home with his wife May 14 and about 9:00 or 9:30 Callahan and Maynard came in and Maynard wanted to employ him to work for his company.  They went together to the pool room and played about two hours, and it was after twelve o'clock when he left the pool room.  After he got home Ellis and Ford, one or both of whom were rooming at his house, came in and wanted Sponagel to go for a ride with them.  They stayed ten or fifteen minutes.  Ford went out and came back with a couple of automobile robes, a tire and an overcoat.  He said it was too warm for the coat and he would leave it there.  The first time he knew he was charged with robbery was the last of July or first of August.

John Callahan testified he went to Sponagel's house the evening of May 14 with Maynard.  He went to the pool room with them and remained there till about eleven o'clock, when he went home.  He testified he knew Sponagel's general reputation in the neighborhood where he lived for honesty and integrity, and so far as he knew it was good prior to May 14.

The foregoing is the substance of the material testimony as to Sponagel on both sides.  He contends that his guilt was not proven beyond a reasonable doubt, that the court erred in refusing and in modifying instructions, and that the State's attorney in his argument indulged in inflammatory statements which were highly prejudicial.  It is argued that he proved he was not at the place of the crime at the time it was committed but was elsewhere, and this is sufficient to at least raise a reasonable doubt of his guilt.  It is not surprising that the jury gave little credit to the alibi of Sponagel.  Lindberg positively identified him as the man who got in the seat with him and held a gun to his side while he was driving the car and later took the wheel and drove himself.  He was also identified by Mr. and Mrs. Carlson.  His conduct at the time of his arrest and his explanation of how Lindberg's overcoat came to be in his

house were not calculated to impress the jury with the credibility of his defense. The question of alibi is one of fact, and proof of that defense must be of such a character as, considered in connection with all the other evidence, is sufficient to create a reasonable doubt in the minds of the jury of defendant's guilt. (*Ackerson* v. *People,* 124 Ill. 563; *Hauser* v. *People,* 210 id. 253; *People* v. *Scott,* 261 id. 165.) Because the testimony is conflicting does not necessarily raise a well founded and reasonable doubt. It is very ·seldom· there is no conflict in the testimony of the respective . sides, and there would rarely be a conviction in a criminal case if a defendant's guilt could only be established by uncontradicted testimony. We would not be justified in reversing the judgment as to Sponagel on the ground that the evidence was insufficient.

It is contended the court erred in modifying, and giving as modified, defendants' twentieth instruction. The part of that instruction given was as follows:

"The court instructs the jury that where a person on trial for a crime shows that he was in another place at the time when the act was committed, he is said to prove an alibi. One of the defenses interposed by the defendants in this case is what is known as an alibi, that is, that the defendants were at another place at the time of the commission of the crime. The court instructs the jury that such a defense is as proper and legitimate, if proved, as any other, and all the evidence bearing on that point should be carefully considered by the jury. If in view of all the evidence the jury have a reasonable doubt as to whether either of the defendants was not present but was in some other place, when the crime was committed, they should give such defendant or defendants, the benefit of the doubt and find him or them not guilty. As regards the defense of an alibi, the jury are instructed that the defendants are not required to prove that defense beyond a reasonable doubt to entitle them to an acquittal. It is sufficient if the evi-

dence upon that point raises a reasonable doubt of their presence at the time and place of the commission of the crime charged."

The remainder of the instruction, which the court refused to give, was practically a repetition of what was given, but it is claimed it should have been given because the part refused ended by telling the jury that if they entertained a reasonable doubt as to the guilt of defendants, or either of them, they should find them not guilty, although the jury might not be able to find the alibi was fully proved. Complaint is made of one other instruction refused, but we are of opinion that no error was committed by the court in modifying or refusing instructions.

In his argument to the jury the State's attorney referred to men going out with murder in their hearts, carrying concealed weapons, in order to commit robbery, and said if somebody makes a false step there is liable to be murder. He said men had a right to travel the streets of Chicago; that Carlson, Allen and Lindberg had a right to travel the streets. He also mentioned jurors Hart and Kavanagh as having such right, and that all the men in the court room had that right, in day time or night. Defendants' counsel objected that he was mentioning jurors by name, and the court ruled that was not proper. In his argument the State's attorney referred to something that happened May 27. He did not say what it was nor mention the names of any parties. The court ruled it was improper to make reference to anything that might have happened May 27. The court's ruling was correct, and no further objection was made to the argument of the State's attorney. We do not see how anything he said could have prejudiced defendants with the jury.

Counsel for Sponagel contends what is known as the Parole statute is unconstitutional. This question has been decided contrary to that contention in *People* v. *Doras,* 290 Ill. 188, *People* v. *O'Donnell,* 291 id. 178, and other cases.

An opinion was filed at the April term, 1922, affirming the judgment as to both plaintiffs in error. A petition for rehearing has been presented on behalf of Martin, and as to him we are of the opinion the case should receive further consideration. For this purpose his petition for rehearing is allowed, and the opinion filed at the April term has been modified so as to limit the affirmance of the judgment to the conviction of Sponagel.

The judgment is affirmed as to Sponagel and a rehearing is allowed as to Martin.

*Affirmed as to Sponagel.*
*Rehearing allowed as to Martin.*