(No. 15733.—Reversed and remanded.)

The People of the State of Illinois, Defendant in Error, vs. Raymond C. Kemming, Plaintiff in Error.

*Opinion filed February 19, 1924.*

1. Criminal law—*when expert testimony as to speed of automobile is not proper.* In a prosecution for manslaughter in running over a pedestrian with an automobile it is error to permit a taxi-driver to give an expert opinion that the car was running forty miles an hour, where the hypothetical question put to him assumes that the brakes were in good condition, where no other witness testifies to the speed of the car, where it appears that the witness had not driven cars as large as the one described in the question, and where the defendant's car was an old one and its brakes were not in good condition.

2. Same—*jury may find defendant guilty notwithstanding testimony as to alibi.* It is the province of the jury to determine the credibility of the witnesses and the weight to be given to their testimony, and where there is testimony conflicting with that given to prove an alibi or the circumstances tend to discredit such proof, the jury may find the defendant guilty notwithstanding the testimony as to an alibi.

3. Same—*when reviewing court will reverse conviction on the evidence.* A reviewing court is reluctant to reverse a judgment of conviction on the ground that it is not warranted by the testimony, but where the evidence is of such a character that the court can not say the guilt of the accused was proved beyond a reasonable doubt it is its duty to reverse the judgment.

Writ of Error to the Criminal Court of Cook county; the Hon. John A. Swanson, Judge, presiding.

Charles E. Erbstein, and John B. Fruchtl, for plaintiff in error.

Edward J. Brundage, Attorney General, Robert E. Crowe, State's Attorney, and James B. Searcy, (Henry T. Chace, Jr., Edward E. Wilson, and Clyde C. Fisher, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, who is about twenty-two years of age and a resident of Chicago, was convicted in the criminal court of Cook county upon an indictment charging him with manslaughter. Motions for new trial and in arrest of judgment were overruled and he was sentenced on the verdict to an indeterminate period in the penitentiary. He has sued out this writ of error to reverse the judgment.

The assault mentioned in the indictment was made on December 13, 1922, with an automobile, upon the body of Anna McInerney, a child almost eleven years of age, who died very shortly after being struck by the car.

Some of the facts developed upon the trial were, that on Wednesday afternoon between 5:00 and 5:15 o'clock, Anna McInerney, while walking west across Crawford avenue on the south side of Thomas street, at the intersection of Crawford avenue and Thomas street, was struck by a Packard touring car being driven north on Crawford avenue. Crawford avenue runs north and south and Thomas street east and west. On Crawford avenue there are two street car tracks, one used for north-bound and the other for south-bound traffic. That avenue is paved with asphalt except between the car tracks, which space is paved with brick. Thomas street is paved with asphalt. The paved portion of that street is about thirty feet wide. There is a ten-foot vacant space or grass plot on each side of the street between the curb and sidewalk, and the sidewalks are six feet wide, making the width of Thomas street between the building lines on either side of the street about sixty-two feet. On the northeast corner of the intersection of said streets is a drug store, and immediately joining that on the north is an Atlantic and Pacific store. These two stores occupy about thirty-five feet on Crawford avenue north of the northeast corner of the intersection. Over the

Atlantic and Pacific store was a doctor's office. Near the northeast corner of the intersection are other stores, and residences are in the neighborhood. On the southeast corner of the streets, near where the accident occurred, is an electric light. After being struck by the touring car the body of the child was found on the north-bound car track a little distance north of the south crosswalk of the intersection.

The accident was observed by three or four witnesses, and from their testimony it appears the car that struck the child proceeded north across Thomas street and stopped at the east curb on Crawford avenue, about in front of the Atlantic and Pacific store, which was shown to be some eighty feet from the point of impact. One of the witnesses, Miller, who was on the northeast corner of the streets, heard a crash and saw the little girl lying on the car track. He ran and picked her up and carried her toward the doctor's office over the Atlantic and Pacific store. When half way up the stairway he was told the doctor was out. He came back down, got into the rear seat of the touring car standing at the curb, which the State contends was the car of plaintiff in error, and was driven to St. Anne's Hospital, where witness was helped into the hospital by the driver of the car. Witness carried the little girl up to the operating room of the hospital. The driver of the touring car then disappeared. It further appears that on the following Sunday evening, December 17, plaintiff in error, with Albert Fisher and a girl friend of Fisher's, drove into a Standard Oil filling-station at Parkside and Chicago avenues. The car being driven by plaintiff in error was an old-type Packard, and while there he was taken into custody by officer Bazarek, and they drove to the Austin police station, where plaintiff in error was questioned by the police. Three of the witnesses to the accident were brought to the police station, and they identified plaintiff in error as the

man who drove the car on the evening of the accident at Thomas street and Crawford avenue.

Counsel for plaintiff in error have assigned several errors. The most important of these are, that the court erred in permitting, over objection, a witness named Parker to answer a hypothetical question propounded, and in answer thereto give his opinion as an expert as to the speed of the car at the time of the accident; that the court erred in permitting officer Bazarek to testify as to what the mother of plaintiff in error said to the officer, not in the presence of plaintiff in error; that the verdict of the jury is contrary to the weight of the evidence.

The defendant denied he was the driver of the car which caused the death of the child, and proved by several employees at the place he worked, which was about eight miles from the place of the accident, that he worked there until 5:30 P. M. the day of the accident, and also that his old model Packard car was not in running order that day and could not be driven. According to the testimony of officer Bazarek, who arrested plaintiff in error, the latter's testimony on the trial was practically the same as the story told by him at the time of his arrest, at which time he denied having an automobile accident on December 13 at Thomas street and Crawford avenue and stated he was at work for the Donnelly Corporation at the time. The State produced three witnesses who saw the accident. They had never seen plaintiff in error before that time, but they identified him as the man who after the accident drove the Packard car up to the curb in front of the Atlantic and Pacific store and also drove the car when the little girl was taken to the hospital. The three eye-witnesses for the State who identified plaintiff in error were Miller, Cronin and Ryan. Miller testified he was on the northeast corner of Thomas street and Crawford avenue; that he heard a crash, turned around and saw a little girl lying on the street car track and ran out and picked her up. He saw the automobile, after it hit

the little girl, skidding along with the brakes on, and the brakes were squeaking. He said it was an old, large-size touring car, but he didn't know the model or make. He did not see the car before the accident and did not see the car stop. When he heard the brakes squeaking the car had gone past Thomas street. It was this car he rode in to the hospital. Cronin testified that he was on the west side of Crawford avenue, about eighty-five feet south of Thomas street. He heard glass break, saw the car, and it kept going about eighty feet after it hit the girl and stopped on the east side of Crawford avenue, right in front of the doctor's office. He heard the squeak of brakes after the car hit the girl but did not see the car before he heard the glass break. Witness went over and stood by the car after it stopped. It was an old-time Packard car. Saw no broken glass on the car. Saw the driver. Witness opened the door of the car to let Miller in with the little girl. Ryan, a boy fourteen years old, testified that he was on the northeast corner of the intersection and heard the crash of glass and looked and saw the back of a machine passing over a little girl. The wheels did not run over her at all. After the car hit the girl it went about fifty feet on the car tracks and then turned in to the curb. Never saw the car till after the girl was struck. Heard the squeaking of brakes. The car was an old model Packard car and had the lights on as it stood at the curb north of the drug store. Saw the driver get out of the car and saw Miller get into the car with the little girl.

The State produced witness Paul Parker, who testified he had been driving a Checker cab for two years and had driven an automobile for nine or ten years. A hypothetical question was propounded to the witness which assumed the condition of the street as the proof showed it to have been; the absence of ice; that the car was a heavy Packard seven-passenger automobile of an old model; that a child crossing Crawford avenue on Thomas street about eight

or ten feet from the southeast corner of Crawford and Thomas was struck by the automobile going north on Crawford avenue; that the driver put on the brakes immediately and stopped the car at a distance of about ninety-seven feet from the point of contact with this child, and that the brakes were in good condition; and witness was asked if he had an opinion as to the rate of speed at which the automobile was traveling when it struck the child. Over objection the witness answered, "Forty miles an hour." It developed on cross-examination that the witness had very little knowledge of larger cars and no experience with any type of Packard cars but had driven smaller and lighter cars and based his answer solely upon the condition of the car witness drove. The witness further stated that squeaky brakes indicated that the brakes were not in good condition. The question assumed the brakes were in good condition and that the car slid or skidded ninety-seven feet thereafter. The proof in the record tends to show that plaintiff in error's old Packard car was dilapidated and the brakes were not in good condition. Under the state of the record the proof was improper. It should be borne in mind that none of the alleged eye-witnesses to the accident even intimated what speed the car was going at the time of the accident or thereafter and no witness saw the car prior to its contact with the child.

The three witnesses for the State who identified plaintiff in error as the man who was driving the car when the accident occurred were Miller, Cronin and Ryan. None of them had ever seen him before. At the time they saw him at the car it was dark. Miller rode with him in taking the little girl to the hospital but his attention was more particularly occupied with the injured child, and when he was called to the police station to identify plaintiff in error he could not be positive of the identification until plaintiff in error's overcoat was procured and he put it on. The identification of plaintiff in error by the three witnesses was

reasonably positive, but in view of the testimony hereafter to be referred to, and the known possibility of a mistake in identifying a man whom the witness had never seen but once and under such circumstances as here existed, we can not regard plaintiff in error's guilt as having been proved beyond a reasonable doubt.

Plaintiff in error worked for the Reuben H. Donnelly Corporation, at 652 South State street, which is about eight miles from the place of the accident, which, as we have said, occurred a few minutes after five o'clock the evening of December 13, 1922. He testified he was working there from 8:30 in the morning until 5:30 in the evening. His employer had a time-clock system of checking up on its employees, who were required to punch the time they went to work in the morning and when they quit in the evening. Plaintiff in error's time card was lost at the time of the trial, but at the time of his arrest and the investigation made by the police officers at his employer's the card was in existence, was seen and examined by several witnesses and exhibited to officer Bazarek. The supervisor for plaintiff in error's employer, who was immediately in charge of plaintiff in error, testified he saw the time card after December 13, examined it and exhibited it to the police officer, and that the card showed plaintiff in error checked out on the 13th of December at 5:32. Woods, chief clerk for the Donnelly Corporation, testified he saw the time card, that the police officer examined it, and that it showed plaintiff in error checked out at 5:32 on December 13. The payroll clerk of the Donnelly Corporation testified she saw plaintiff in error's time card for the week of December 13 and that she made the pay-roll sheets from the cards and the daily work ticket; that December 13 plaintiff in error's time card showed he began work at 8:30 and quit at 5:30. The witness detailed the time plaintiff in error worked each day, beginning Monday, December 11, and that the time cards and work tickets, from which the pay-roll was made

up, showed that plaintiff in error came in at 8:30 Wednesday morning and went out at 5:32 in the evening. Melvin Roth, a clerk for the Donnelly Corporation, testified that he worked there on the 13th of December; that plaintiff in error worked there that day all day. Witness' card was punched for quitting time at 5:30 or 5:32. When witness punched his card plaintiff in error was standing alongside of him and requested the witness to also punch his card, as there was a long line behind witness and plaintiff in error was in a hurry to catch a train. Albert Fisher testified he was on the train with plaintiff in error when he went to his place of work on Wednesday, December 13. The two had lunch together at noon. He saw plaintiff in error in the evening as he came out of his place of employment with a young man named Roth. It was about 5:30 or a minute or two later. Witness and plaintiff in error hurried to a station to take a train on the Chicago, Milwaukee and St. Paul railroad, which left the station at 5:44. He testified both their fares were paid by him, he having his twenty-five-ride ticket punched for the two. Plaintiff in error got off the train at Hermosa station, which was a seventeen or eighteen-minute ride from where they boarded it, and it was then after six o'clock. Witness left the train at Cragin station, which was a twenty-one-minute ride from where they boarded it.

Besides the above testimony there was the testimony of several witnesses who were in no way connected with plaintiff in error and are apparently disinterested, that plaintiff in error's car was not in running condition from December 12 until the following Sunday, during which time it stood outside a building near plaintiff in error's residence. Some of the witnesses testified to having at different times, before and after December 13, assisted or tried to assist plaintiff in error in getting his car in running order, and that he never succeeded in doing so until Sunday evening after December 13, when he started it and was arrested

while driving the car. The officer who made the arrest did not know him but made the arrest because he was driving a large, old model Packard car. When arrested plaintiff in error gave the officer his correct name and place of residence but denied he was driving the car at the time and place when the accident occurred.

It is true, the rule is that it is the province of a jury to determine the credibility of the witnesses and the weight to be given to their testimony, and where there is any reasonable basis for disbelieving testimony to prove an alibi, or where there are any circumstances which may tend to discredit such testimony, the jury may, notwithstanding the evidence that the defendant was not at the place where the offense was committed at the time of its commission, find him guilty. (*People* v. *Martin*, 303 Ill. 233 and 304 id. 494; *People* v. *Hildebrand*, 307 id. 544.) Disregarding the testimony of plaintiff in error's father and mother, with whom he lived, that the car could not be used the week of December 13, and that they assisted plaintiff in error on different occasions during that week in trying to put it in running order, we cannot see any reason, because of the character of the witnesses or on account of their relations with plaintiff in error, that there is any basis for disbelieving the employees of the Donnelly Corporation that plaintiff in error worked at that place, eight miles distant from the place of the accident, from 8:30 in the morning of December 13 till 5:30 in the evening, and the testimony of other witnesses that the car was not in running order during that week and the reasons why they knew it was not. A reviewing court is reluctant to reverse a judgment of conviction on the ground that it is not warranted by the testimony, but when the evidence is of such a character that a reviewing court cannot say the guilt of the accused was proved beyond a reasonable doubt it is its duty to reverse the judgment. (*People* v. *Campagna*, 240 Ill. 378, and cases there cited; *People* v. *Ahrling*, 279 id. 70.) We cannot

say the proof in this case was sufficient to exclude every reasonable doubt of the guilt of plaintiff in error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*