**People of the State of Illinois, Plaintiff-Appellee, v. Earl Foster, Defendant-Appellant.**

Gen. No. 53,155.

First District, Fourth Division.

September 10, 1969.

Rehearing denied October 24, 1969.

Edward M. Genson and Louis S. Elovitz, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Earl J. Foster, was charged with the offenses of driving while under the influence of intoxicating liquor and making an improper U-turn. After a bench trial, he was found guilty of driving while under the influence of intoxicating liquor, and fined one hundred dollars and costs. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt.

The only witnesses at trial were the arresting officer and defendant. Officer George Betts of the Chicago Police Department testified that on August 2, 1967, he was proceeding south on Western Avenue, Chicago, in a squad

car. Defendant, going north, made a sharp left turn in front of him, pulled through a driveway and attempted to go down an alley. The officer went down the other end of the alley and met defendant head-on, stopping him. Defendant smelled of alcohol, was unable to walk, and was belligerent. He was transported to the police station in a patrol wagon. Betts filled out an alcoholic influence report. Defendant answered certain questions, but refused to take any tests. Defendant told the officer that he was picking up his wife, and that he was coming from a friend's home. He stated that he had drunk two bottles of beer during the evening, that he had been to a doctor recently, and that the doctor had prescribed tranquilizers. He had taken one tranquilizer about 2:00 a. m. the morning before. Betts testified that defendant's eyes were bloodshot, the color of his face was normal, his clothes were mussed, his attitude was combative and indifferent, insulting and cocky. He had no unusual actions except that he refused to be placed under arrest and ran into a building where the officer had to wait until he came out. The officer also observed that defendant's balance and walking were unsure, and that he was very thick tongued. The witness had been on the police department for seventeen years, and had seen about two or three hundred people under the influence of intoxicating liquor. In his opinion, defendant was under such influence, and was unfit to drive a vehicle at that time and place.

On cross-examination, the officer testified that he had related all the conversation which had taken place at the scene. It was possible that he had said to defendant: "Boy, where are you going?" and that defendant replied something to the effect: "Oh, no, the great white father is now going to lecture me." He did not call defendant a "black son-of-a-bitch nigger." He did not

have an argument with defendant. Defendant wanted to argue, but he refused.

Defendant testified that he was married, had three children, and had been employed at International Harvester for nine years. He had never before been charged with the offense of driving under the influence of liquor. On the evening in question he attended a neighborhood meeting to discuss the maintenance of a stabilized and integrated community. At the meeting, which ended at 12:30 a. m., he had two Michelob beers. He went to pick up his wife, who worked at 6017 South Western, Chicago, across the street from where he was arrested. She finished work at 1:00 a. m. He was in the left lane, and signaled to make a left turn into a restaurant parking lot. He stopped in the driveway to the lot because he had noticed the police car and heard the siren. The officer came up and said, "Boy, where in the hell are you going?" Defendant then said: "Well, here we go, the great white father again." One word led to another, and the officer decided to arrest him. Defendant walked over to ask some people in the doorway of his wife's employer to inform his wife of what had happened. The officer informed him that he was going to call a wagon. While they were waiting for the squadrol, the officer kept whispering "you black nigger, you son-of-a-bitch," and various other derogatory remarks. Defendant waited quietly, and went along peacefully. He refused to perform any tests at the station because he believed that he did not have a chance anyway. He did not need support, and no one helped him into the squadrol. In his opinion, the two beers had not affected his driving ability. He had been in the hospital for ulcers, and the doctor had prescribed tranquilizers about a week before this incident. It was possible that the combination of beer and a tranquilizer may have affected his ability to drive.

Officer Betts was recalled as a rebuttal witness. He may have called defendant a "black son-of-a-bitch" and

"nigger." He was provoked by defendant who kicked, hit and attempted to bribe him. He did not charge defendant with resisting arrest or for attempted bribery. This was the worst case of its kind he had seen in ten years. Defendant fell out of his automobile.

Defendant contends that he was not proved guilty of driving under the influence of intoxicating liquor beyond a reasonable doubt.

 The State must prove beyond a reasonable doubt that defendant was under the influence of intoxicating liquor, but ordinarily it is the province of the trier of fact to weigh the evidence and to determine the credibility of the witnesses. People v. Mundorf, 97 Ill App2d 130, 239 NE2d 690 (1968). However, where the record leaves a reasonable doubt as to defendant's intoxication, this court will reverse. People v. Mundorf, 85 Ill App2d 244, 229 NE2d 313 (1967).

At the time of the arrest, the officer's initial question seemed to provoke a disrespectful answer and emotional outbursts followed. In this setting we must examine the officer's opinion as to defendant's intoxication. The police officer, in his original testimony, stated that he had not made any remarks of a racial nature, and that he had not argued with defendant. However, when called by the State in rebuttal, he admitted that he may have made such remarks. He also for the first time in rebuttal stated that there had been an attempted bribe and an assault on the part of defendant. Even though the officer had testified that this was the worst case of its kind that he had seen in ten years, he did not charge defendant with either attempted bribery, resisting arrest or assault. After testifying that defendant was so drunk that he was unable to walk, and in fact, fell out of his car, he testified that defendant ran into a building and then came out while the officer waited and that defendant refused to take any tests at the police station. These are glaring inconsistencies.

■ We conclude that the State's evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

The State's primary argument in this court in its brief and at oral argument has been that defendant was proved guilty of driving while under the influence of a drug, a violation of section 47b of the Uniform Act Regulating Traffic on Highways, which reads as follows:

"(b) No person who is an habitual user of or under the influence of any narcotic drug or who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle may drive or be in actual physical control of any vehicle within this State. The fact that a person charged with a violation of this subsection (b) is or has been entitled to use such drug under the laws of this State does not constitute a defense against any charge of violation of this subsection (b)." (Ill Rev Stats 1967, c 95½, § 144–47b).

We deem it unnecessary to consider whether the evidence presented at trial could support a conviction for driving under the influence of drugs, since prior to trial, the State on its own motion, specifically deleted the words "narcotic drugs" from the complaint, and proceeded to trial on the charge of driving under the influence of intoxicating liquor. Moreover, the judgment order entered by the trial court set forth the specific finding that defendant was driving under the influence of intoxicating liquor.

Accordingly, the judgment of the Circuit Court is reversed.

Judgment reversed.

DRUCKER, P. J. and ENGLISH, J., concur.