THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAUDE A. PIGG, Defendant-Appellant.

(No. 58476;

First District (4th Division)—February 6, 1974.

JOHNSON, J., dissenting.

Laser, Schostok, Kolman & Frank, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Michael J. Polelle, John Brennan, and Michael Robbins, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The defendant, Claude A. Pigg, was arrested on June 12, 1971, and charged with driving a motor vehicle while under the influence of alcohol, in violation of section 11—501(a) of the Illinois Vehicle Code

(Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(a)), and with improper lane usage, in violation of section 11—709(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—709(a)). Following a jury trial in the Circuit Court of Cook County, the defender was found guilty of both offenses and was fined $200 for driving a motor vehicle while under the influence of alcohol and $10 for improper lane usage. In addition, he was directed to pay $10 in court costs. Defendant appeals these convictions, contending that the evidence offered by the State at trial, consisting solely of the testimony of police officers, was not sufficient to prove him guilty of the offenses beyond a reasonable doubt. He contends further that the officers had become "emotionally involved with the defendant and consequently, their ability to impartially judge the defendant's fitness to drive was impaired and the evidence offered by the officers tended to be contradictory and inconsistent."

The State at trial presented the testimony of the arresting officer, the testimony of another officer who had observed defendant at the police station, and a third officer testifying in rebuttal as to the condition of the defendant's vehicle when it was later secured by the police. The arresting officer stated that at about 4:10 A.M., on June 12, 1971, he observed defendant's vehicle traveling at a high rate of speed and swerving from the right lane to the left lane several times in a short distance. At one point the defendant's vehicle swerved off the road and onto the gravel shoulder. The officer stopped defendant and requested that he produce his driver's license. The officer stated that at this time he noticed a strong odor of alcohol. Defendant opened the door to his car and attempted to get out, pulling himself out by using the top of the door as support. While he spoke to the officer, defendant held the top of the car for support. He followed the officer over to the squad car and leaned against the side of that car while the officer called the station on his radio. Officer Theriault stated that he observed defendant's "stumbling" walk as he followed him over to the squad car.

Officer Theriault then transported defendant to the police station, where he assisted him in getting out of the squad car. The officer advised defendant of his right to remain silent and his right to counsel, after which defendant said that he would not answer any questions and would not take the breath analysis test. The defendant was told to remain seated but insisted on getting to his feet from time to time and walking around the room. Officer Theriault testified that at this time defendant's walk was staggering and stumbling. He stated that defendant made several derogatory comments about the officer and police in general, bragged about the amount of his income, and used profane language. Officer Theriault concluded his testimony by saying that, in his opinion,

defendant was under the influence of an alcoholic beverage when he was stopped in his motor vehicle and that he was not fit to operate a motor vehicle at the time.

Sergeant Thomas Klinger testified as the next witness for the State. He was called to come to the Rosemont Police Station by Officer Theriault to assist in the arrest processing of defendant. He was at the station when defendant was brought in by Officer Theriault. The testimony of Sergeant Klinger as to what took place at the station was generally the same as given by Officer Theriault, particularly regarding defendant's condition, walk, and language.

The defendant testified in his own behalf. He stated that he had never been arrested for driving under the influence of an alcoholic beverage prior to the present complaint, nor had he been arrested or been issued a citation for any traffic violation. On June 11, 1971, his day off from work, defendant had played a round of golf with Mr. Alfred Cicella. He did not drink any alcoholic beverage during or immediately after this game. He went to his house with Mr. Cicella and arrived at Mr. Cicella's house for a surprise birthday party at 8:00 P.M.

At this party, defendant testified that he drank two "Manhattans" between 8:30 P.M. and 10:00 P.M. and ate a wide variety of hors d' oeuvres. Sometime between 10:00 P.M. and midnight he drank a "straight bourbon and water" but he was not sure if he finished the entire drink. Defendant stated he did not have any other alcoholic drinks that evening. He left the party at about 3:00 A.M., and at that time he testified he was not under the influence of alcoholic beverages. The weather that day was extremely hot and humid. Defendant testified that in such weather the top of both his feet get painful blisters. (He had been treated before by a physician for this condition, which affected his walk.) As he drove home from the party he changed lanes several times to avoid holes in the street and puddles of water from a recent rain.

Defendant then testified that he was stopped by Officer Theriault, who made fun of defendant's name when he handed him his driver's license asking, "How does it feel to be a pig?" He stated that when he reached the police station, he was able to get out of the squad car without any assistance. He denied making any statement regarding the amount of his income to the officer and did not use any profane language.

Alfred Cicella testified next on the defendant's behalf. His testimony generally agreed with that given by defendant as to the events of June 11 and 12, 1971, prior to the time defendant left his party. He remembered defendant complaining about the pain in his feet and said that he only saw defendant with three drinks that evening. In his opinion, defendant was not under the influence of alcohol when he left the

party. Miss Ereen Bouzeanes, Mr. Cicella's fiancee, gave the same opinion when she testified next.

■■ A conviction for driving a motor vehicle under the influence of alcohol may be sustained though based entirely upon the arresting officer's testimony and observation and not upon any scientific evidence of intoxication, such as a breath analysis test. (*People v. Casa*, 113 Ill.App. 2d 1, 251 N.E.2d 290.) Defendant acknowledges this, but argues that the officers' testimony was so inconsistent and contradictory that a conviction based on this evidence cannot be sustained. Further, he contends that State's witnesses were biased against the defendant and as a result of this bias they were unable to make a "correct appraisal of defendant's ability to drive and his alleged intoxication." We disagree with these contentions.

Examining the question of bias first, defendant's position is somewhat unclear. The State's witnesses testified that defendant had made several insulting remarks to them and had used profane language on at least one occasion. Defendant denied making any of these remarks when he testified, and he further testified that the arresting officer had in fact made an insulting comment regarding his surname. Defendant, in his brief, seems to argue that since the remarks were never made by him, that the State's witnesses fabricated this story and therefore were biased against him. Defendant's brief contains other language, however, which may be taken to mean that defendant had in fact made insulting comments or was arrogant in his conversation with the State's witnesses (contrary to his testimony at trial) and they were biased as a result. We are told for example that:

> "The defendant is a highly educated independent man of principle who was and is not accustomed to intimidation and assuming a subservient role. The defendant's demeanor perhaps was a consequence of 95-degree temperature and humidity in that a day spent enduring said weather tends to weaken even the strongest individuals."

> * * *

> Furthermore, the record is replete with innuendoes of bias. The testimony that defendant felt sorry for the officers, their wives and children for having to endure the likes of the officers; the testimony that the officers found defendant's name a curious and interesting one; the officers both testified that the defendant acted like a gentleman when asked for a license; and that he was cooperative with all. Perhaps defendant felt that his indulgence of courtesy was ill received by the officers."

■■ The question of whether bias or interest of a witness has affected

his testimony has long been left for the determination of the jury. As Justice John Reynolds noted in *Noble v. People*, 1 Ill. (Breese) 54, discussing whether a witness with a demonstrable interest in the outcome of the trial was competent to testify:

"This interest must be left to his credit. If the witness be manifestly biased by his interest, the jury can detect him." 1 Ill. (Breese) at 56.

More recently, in *People v. Rainford*, 58 Ill.App.2d 312, 208 N.E.2d 314, this court stated:

"The bias of a witness towards a party against whom he is called to testify is always pertinent on the question of his credibility. [Citation.]" 58 Ill.App.2d at 322.

(See also *Neagle v. McMullen*, 334 Ill. 168, 165 N.E. 605; *People v. Ickes*, 370 Ill. 486, 19 N.E.2d 373; and *People v. Curtis*, 123 Ill.App.2d 384, 259 N.E.2d 397.) Determination of the credibility of witnesses is the function of the jury and a reviewing court will defer to this judgment. *People v. Stewart*, 46 Ill.2d 125, 262 N.E.2d 911.

■■ Defendant raises several points which he characterizes as inconsistencies in the testimony of the State's witnesses. He further argues that some of the physical manifestations which the officers took as indications of intoxication were "explained" in the testimony of defendant and his witnesses, such as the stumbling walk being caused not by intoxication but by painful blisters. A careful reading of the record in the instant case shows that most of the alleged inconsistencies are either very minor or merely a matter of conflicting testimony. In a like manner, defendant's explanation of his behavior at the time and his witnesses' testimony in support of his version of the incident is again a matter of conflicting testimony. Bias, inconsistencies in testimony, and conflicting testimony, are all matters relating to the credibility to be afforded the testimony of a witness. In the instant case, and in other cases where this particular conflict is presented, it is "* * * within the jury's province to determine the credibility of the police officers and to accept what testimony they believed and reject what testimony they did not believe." (*People v. Krueger*, 99 Ill.App.2d 431, 442, 241 N.E.2d 707.) Where the guilt or innocence of a defendant rests upon the credibility of conflicting testimony, a reviewing court will not substitute its judgment for that of the trier of fact (*People v. Raddle*, 39 Ill.App.2d 265, 188 N.E.2d 101, citing *People v. Cool*, 26 Ill.2d 255, 186 N.E.2d 254 and *People v. Martin*, 303 Ill. 233, 135 N.E. 404), unless that evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Mundorf*, 85 Ill.App.2d 244, 229 N.E.2d 313.

The evidence in the instant case, however, was not so unsatisfactory

as to raise a reasonable doubt as to defendant's guilt. The testimony given here and the alleged inconsistencies are easily distinguishable from those in *People v. Mundorf* and in *People v. Foster*, 114 Ill.App.2d 357, 252 N.E.2d 722, also cited by defendant. In *People v. Mundorf*, the officer testified that the defendant's eyes were bloodshot, while defendant in fact had one glass eye. The officer was further contradicted on other key points. In *People v. Foster*, the officer first denied and later admitted that he may have made remarks of a racial nature to the defendant. He also testified that the defendant was too drunk to walk, but later stated that he ran into a nearby building. The court characterized these as "glaring inconsistencies." (114 Ill.App.2d at 361.) In the instant case, as noted above, the alleged inconsistencies are, at best, minor.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, J., concurs.

Mr. JUSTICE JOHNSON dissenting:

I respectfully dissent from the majority opinion because I feel that the defendant was not proved guilty beyond a reasonable doubt.

The People called three witnesses, all police officers, who observed the defendant. There was no scientific evidence offered by the prosecution as is usually the case.

The defendant testified in his own behalf denying that he was under the influence of alcohol. His testimony was corroborated by Alfred Cicella and Ereen Bouzeanes. The witnesses for the State and the defense were equally creditable. The entire incident seemed to be precipitated by a clash of personalities in an emotionally charged situation. Defendant alleged that there was a derogatory reference to his name, "Pigg." The situation was not improved by defendant's reference to the officer's lack of education and boast of his own training and income.

I would reverse the judgment of the circuit court.