THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. AHERN, Defendant-Appellant.

First District (5th Division) No. 82—2787

Opinion filed October 14, 1983.—Rehearing denied December 13, 1983.

Terrence E. Leonard, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Kip R. Owen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial the defendant, Michael J. Ahern, was convicted of driving under the influence of intoxicating liquor and improper lane usage (Ill. Rev. Stat. 1981, ch. 95½, pars. 11—501(a), 11—709(a)), and fined in the sum of $100 and $35 respectively. He appeals, contending that the evidence was not sufficient to sustain the convictions, that the statutes allowing him the right to refuse a breath test and then allowing the admission of that refusal into evidence in a criminal prosecution against him are in violation of the Illinois Constitution, and that the admission into evidence that he refused to take a breath test was erroneous and requires reversal.

The defendant was arrested on July 22, 1982, at 12:30 a.m., near the intersection of Waukegan Road and East Lake Avenue in Glenview, Illinois. Police officer Donald Hohs testified that he was driving eastbound on the four-lane highway of East Lake Avenue when he saw the defendant emerge from the right lane of Wagner Road and make a wide, right turn into the inner westbound lane of East Lake Avenue. The officer turned his squad car around and drove in a westerly direction behind the defendant for eight blocks. He saw the defendant cross the lane markings in the two westbound lanes about eight times without activating his turn signal, and at times straddle both of the lanes. At one point the defendant crossed the double-yellow center line into the eastbound lane of the highway. When the

defendant approached a raised median strip, he drove onto it and then swerved his car back into the inner westbound lane. At this time, the officer activated his emergency lights and the defendant then turned southbound into Waukegan Road and stopped. The officer stated that the defendant traveled within the posted speed limits at all times.

When the officer asked defendant for his driver's license, he detected a strong odor of an alcoholic beverage. He then asked the defendant to step out of the car, noting that defendant swayed forward as he did so. He asked defendant if he had been drinking, and he replied "a couple." The defendant was then asked to walk heel to toe to the rear of the squad car, a distance of seven to 10 feet, and to walk back. When the defendant tried he appeared unsure and swayed. Then the officer asked the defendant to get into the squad car, and the defendant requested the officer to give him "a break." The defendant was also indecisive when he was asked if he would like his car parked or towed, so the officer ordered it towed.

At the station, the officer asked the defendant questions on an alcohol influence report form. The defendant told him he had eaten a sausage pizza at 8:30 p.m. the evening before, had slept for two hours, and had several beers between 11 p.m. and 12:30 a.m., but that he knew what he was doing. The defendant then took a finger-to-nose test, but refused to take a breathalyzer test. The officer stated that the defendant's speech was "thick-tongued," and that in his opinion the defendant "was in a state of intoxication where he should not operate a motor vehicle properly."

For the defense, Lynn Schmidt testified she is a member of a softball team which the defendant managed and played on. The team members had met to play a game, but the game was cancelled because of rain. Therefter, they went to the Willow Inn, the sponsors of their team. There she saw the defendant drink several beers at the bar while he watched a ball game on television. Thereafter, the defendant left, and later called them to say he had been arrested for drunken driving. The team then put up money for his bail, and she and her husband drove to the station. She said there was nothing unusual about the defendant's appearance after his release and that they then drove him home. She admitted she had also had something to drink while at the Willow Inn.

Joseph Schmidt corroborated his wife's testimony, saying that when the defendant left the Willow Inn there was nothing unusual about him and that the defendant "was not under the influence of alcohol where he could not drive a car *** by any means."

William Geist testified he was also at the Willow Inn and that during the hour before the defendant left, he observed and talked with him often. He did not think the defendant was under the influence of alcohol when he left.

The defendant testified that prior to the softball game he had worked on his job as a salesman until 2:30 p.m. Thereafter, he slept from 3:30 to 5:30 p.m., and then ate a pizza. He went to the park between 8:30 and 9 p.m., but it rained. He then joined his teammates a little after 10 p.m., at the Willow Inn. He was wearing his softball outfit and shoes. At the inn he drank three or four Lite beers. Defendant asserted that he was not under the influence of alcohol when he left around midnight and had no difficulty in maneuvering his automobile. He said when he approached the four-lane East Lake Avenue, he stopped for a red light. He initially turned west into the right-hand lane, but there was no traffic near him, or behind him, so he pulled over into the inner lane. He admitted he did not use a turn signal because no one was on the road near him. He had no recollection of crossing lanes or crossing the center line into the eastbound lane. He testified he was familiar with the road, and that he was just short of the median strip when he saw the lights of a police car behind him. He recalled that he slowed down to let the arresting officer know that he recognized him and looked for a safe place to stop. He did not recall driving up on the median strip. When he turned off the highway, he proceeded several hundred feet down Waukegan Road and stopped. The officer then asked him to get out of his car and walk an imaginary line from his car to the bumper of the squad car. He admitted he was concentrating on trying to walk the "line" and show the officer he could do it. He asked the officer if he thought he was all right, and the officer replied, "I think you have had too much to drink," whereupon he was ushered into the squad car. He told the officer that he had made an extra-wide turn onto the four-lane highway because he was trying to light a cigarette and may have changed lanes inadvertently, but he never got to light the cigarette.

Officer Hohs testified in rebuttal that when the defendant told him he was trying to light a cigarette, he searched the car but did not find any. The cigarettes were in the bottom of a closed zipper pocket of the sweatsuit the defendant was wearing. The defendant testified in surrebuttal that he put the cigarette back into the package when the officer turned on his lights, and that he then put the package back into his pocket.

The defendant first contends that the evidence was not sufficient to sustain the conviction. He points out that of the eight times the of-

ficer said he crossed the road markings in an eight-block stretch, one occurred when he entered onto the four-lane road and the next three occurred in the block right after turning onto the road during which time the officer was traveling in the opposite direction before making his "U" turn. Defendant argues that the officer's testimony is insufficient because the officer's version had him moving from the left westbound lane to the right westbound lane while crossing the double-yellow lines dividing the east and westbound traffic and yet the officer did not then stop him but allowed defendant to travel for three more blocks before activating his emergency light. Defendant further points out that the officer's report makes no mention of the multiple crossings, that the officer admitted he did not know whether two sips of beer would give one a strong odor of alcohol on his breath, and that he was cooperative after being stopped and did not act in an unusual manner for one pulled over by a police officer. Also, defendant claims that he had no trouble with the finger-to-nose test; that the officer did not give him the coin test because he "had no coins"; and that he walked in a straight imaginary line in the heel-to-toe test, even though the officer said he was wobbling, swaying and unsure because he was watching his hips. Thus, defendant maintains that the standard of "beyond a reasonable doubt" was not met because the trial court commented several times on the closeness of the evidence and the weakness of the State's case.

It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) A conviction for driving a motor vehicle under the influence of alcohol may be sustained though based entirely upon the arresting officer's testimony and observation and not upon any scientific evidence of intoxication, such as a breath-analysis test. (*People v. Pigg* (1974), 17 Ill. App. 3d 568, 308 N.E.2d 190.) A jury's verdict of guilty will not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346; *People v. Miller* (1968), 101 Ill. App. 2d 361, 213 N.E.2d 277.

■ Here, the officer testified to defendant's erratic lane crossings, his act of swaying and unsure steps when exiting his car and taking the heel-to-toe test, the strong odor of alcohol on his breath, and his "thick-tongued" speech. This evidence, taken as a whole, is not so unsatisfactory, unreasonable, or improbable as to raise a rea-

sonable doubt of the defendant's guilt. Moreover, the defendant admitted he had consumed several beers, admitted he did not see the officer behind him until he activated his lights, although the officer had been behind him for almost eight blocks, and he conceded that he did not recall crossing lanes or driving on the raised median strip. It is the province of the jury to determine the weight to be given to the evidence presented and the inferences to be drawn therefrom (*People v. Akis*), and we hold that the alleged inconsistencies here are minor in nature and do not detract from the jury's verdict.

Defendant next contends that the implied consent statute, which allows him the right to refuse to take the breath test but also allows the admission of his refusal into evidence, is a violation of his right under article I, section 10 of the 1970 Illinois Constitution which provides that a person shall not be compelled in a criminal case to give evidence against himself. He maintains that under the implied consent statute (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c)) there is no true choice for an accused, and that the only two inferences to be drawn by a fact finder from a refusal to take the test are: (1) the defendant was intoxicated otherwise he would have taken the test; or (2) he was so intoxicated he was unable to take the test.

■ The State replies that the United States Supreme Court addressed this very issue in *South Dakota v. Neville* (1983), 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916, which involved a South Dakota statute permitting a person suspected of driving while intoxicated to refuse to submit to a blood-alcohol test. The statute then authorized revocation of the driver's license of a person refusing the test and permitting such refusal to be used against him at trial. The Supreme Court held the admission into evidence of a defendant's refusal to submit to a blood-alcohol test did not offend his fifth amendment right against self-incrimination and that the refusal to take such a test is not an act coerced by the officer and therefore is not protected by the privilege against self-incrimination. The Court stated that "the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." (459 U.S. 553, 564, 74 L. Ed. 2d 748, 759, 103 S. Ct. 916, 923.) It concluded that the right to refuse the blood-alcohol test is simply a matter of grace bestowed by the legislature. We agree, and believe that the rationale above stated is applicable here.

■ Finally, the defendant contends that the trial court erroneously admitted evidence that he refused to take the breathalyzer test because such evidence was prejudicial to his defense where the evidence was not overwhelmingly against him, as here. It is the province

of the legislature to enact the laws and that of the courts to construe them. (*People v. Williams* (1969), 116 Ill. App. 2d 332, 252 N.E.2d 555.) Here, the legislature specifically provided that evidence of refusal to submit to a breathalyzer test shall be admissible in any civil or criminal action. We therefore hold that this contention has no merit.

The judgment of the circuit court of Cook County is affirmed.

As part of our judgment we grant the State's request that defendant be assessed $50 as the cost of this appeal.

Judgment affirmed.

SULLIVAN and MEJDA, JJ., concur.