THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE RADCLIFF, Defendant-Appellant.

Fourth District    No. 4—86—0410

Opinion filed April 9, 1987.

David W. Butler, of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, and James W. Ackeman, law school graduate, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

In a bench trial, defendant was convicted of driving with blood-alcohol content (BAC) greater than .10, driving while under the influence of alcohol (DUI), illegal transportation of alcoholic liquor, and improper lighting (one headlamp) in violation of sections 11—501(a)(1) and (a)(2), 11—502(a), and 12—211, respectively, of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 11—502(a)(1) and (a)(2), 11—502(a), and 12—211). The circuit court of McLean County sen-

tenced defendant to a term of 12 months' conditional discharge, to include 20 days' incarceration in the McLean County jail on the DUI count. He was also ordered to pay a $50 fine plus costs on each of the counts of illegal transportation of alcoholic liquor and improper lighting. No sentence was imposed on the charge of BAC greater than .10. Defendant appeals from the convictions for DUI and driving with BAC greater than .10. We affirm the conviction for DUI. We vacate the conviction of BAC greater than .10, as both alcohol-related offenses arose out of the same act. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Because we hold as above-mentioned, we need deal only with the evidence relating to the charge of DUI.

Defendant raises two other errors on appeal: (1) he was not proved guilty beyond a reasonable doubt on the conviction for DUI, and (2) the trial court erred in allowing the arresting police officer to testify as to his opinion that defendant was unfit to drive.

In order to discuss the first issue, we must look in detail at the relevant testimony obtained at trial. Defendant and two others were stopped by Officer Mark Kotte of the Normal police department at about 2:30 a.m. on June 1, 1985. Defendant was the driver and owner of the vehicle stopped. Defendant and his passengers had been drinking.

The State called only one witness at trial—the arresting police officer. Officer Kotte testified that he had been employed as a police officer for the city of Normal for three years. He stated that through his job he had seen "a couple hundred" people who were intoxicated. At approximately 2:27 a.m. on the morning of June 1, 1985, Officer Kotte was in his patrol car at the corner of Florence and Fell streets in Normal. He observed defendant's car approaching with the right headlight out. He followed defendant. Within the space of a block to a block and a half, defendant's car weaved from side to side of the right-hand lane two to three times. The car also crossed over "a couple of feet" into the left side of the road. Although the street did not have a center line marked on the road, a crack in the approximate center of the street served the officer as a marker.

Officer Kotte turned on his lights and pulled the vehicle over. As the car pulled over, the officer saw defendant's car strike the curb. As Officer Kotte exited his car, defendant also exited from his car. Officer Kotte noticed that defendant used the car door and the side of the car as supports to help him exit. Defendant did not appear to

have good balance as he walked; he staggered a bit and swayed as he walked. Kotte observed a strong odor of alcohol emanating from defendant's car. He noticed a pitcher in front of the passenger seat which contained what subsequently proved to be beer.

The officer gave defendant several field sobriety tests. The first test required defendant to put both feet together, close his eyes, tip his head back, hold his hands out to his sides, and remain as still as possible. Defendant performed the test, but "swayed considerably from side to side." The next test required defendant to assume the same position as the first, but added the act of touching his nose with his right and then his left index finger. Officer Kotte stated defendant touched the upper lip area with both right and left fingers. He also continued swaying. Another test requested of defendant was to recite the alphabet. He completed the alphabet, but with a little hesitation. In another test, defendant was required to stand on one foot, hold the other foot six inches or so off the ground and count to 30. Defendant attempted the test, but started hopping on the one leg on which he had his weight, and his arms came out to his side in order to maintain balance. He also put his second foot down several times. Defendant was next asked to walk heel-to-toe for nine steps, with arms down at his sides. After the ninth step, he was to pivot on one foot, turn around, and come back the same way. Defendant had his arms outstretched for support as he walked and was unable to make the turn. He stumbled as he attempted to turn and did not finish the test.

Kotte arrested defendant and brought him to the station. Kotte testified that en route to the station defendant told him that "he was drunk and that he was not going to pass the Breathalyzer test." He made the same statement to Kotte while in the booking room. Defendant agreed to take the Breathalyzer test, however, and did take the test. The Breathalyzer-test results, having a reading of .11, were introduced into evidence without objection by the defendant. However, the defendant produced evidence suggesting that because of the time span involved between the consumption and the test, that the actual blood-alcohol content count at the time of the arrest would have been .07. Defendant contends that the test lacked probative value and should not be given weight in determining whether or not the defendant had been proved guilty beyond a reasonable doubt of driving under the influence. This argument was before the court, but we find that there is no problem existing in regard to the driving under the influence conviction because, as we will explain, the other evidence was sufficient to support the verdict.

Officer Kotte gave his opinion, based on his experience with intoxicated persons, that defendant was intoxicated.

On cross-examination, Officer Kotte acknowledged defendant cooperated in everything he was asked to do. Although Kotte detected a strong odor of alcohol on defendant's breath, Kotte noticed no unusual actions such as hiccuping, belching, vomiting, fighting, crying, or laughing. Defendant's speech was fair and his ability to understand instructions was also fair. The State then rested its case.

Defendant called several witnesses on his behalf. Mark Rader testified that he was a passenger in defendant's car when it was stopped by Officer Kotte. Rader was sitting in the front seat on the passenger side.

Rader first saw defendant at Ace Liquors around 11 p.m. on May 31, 1985. Rader was playing pool when defendant arrived. Rader did not know how much defendant drank at Ace Liquors, but he did see defendant drinking. They left together in defendant's car and went to a party, arriving between 1 and 1:30 a.m. Defendant walks with a limp because of an accident. Rader has seen defendant intoxicated on previous occasions. He noticed nothing unusual about defendant's walk or driving during the trip to the party.

Rader testified that the party was over when they got to the house. Only two individuals were present: Randy Armstrong and a fellow named Henry, the owner of the house. Defendant began drinking from a quart glass of beer. He drank about half. He teased Henry, and Henry responded by pouring the other half of the glass over defendant's head. Defendant, Rader, and Armstrong then adjourned to the parking lot with a full pitcher of beer. They drank and talked for 30 to 45 minutes.

The three left in defendant's car. Rader stated there was nothing unusual about defendant's driving. When defendant and Armstrong saw the police car behind them, they tried to get rid of the beer by drinking it. Rader estimated that defendant drank about half of the pitcher during the course of the evening. Rader gave his opinion that defendant was "sober" that evening.

On cross-examination, Rader stated that when defendant gets intoxicated, he slurs his speech and sways and staggers when he walks. On redirect examination, Rader stated that defendant did not exhibit any of the signs of being intoxicated with which Rader was familiar.

Randy Armstrong was also called to testify for defendant. He corroborated Rader's testimony that at the party defendant drank about one-half of the quart glass of beer. He stated that defendant

drank about half the beer in the pitcher. He noticed nothing unusual about defendant's driving. Armstrong stated that he and defendant tried to finish the beer in the pitcher after the police car turned its lights on to pull defendant's vehicle over.

Dr. Goldberg, a medical doctor, testified next. Dr. Goldberg testified to an injury of defendant's. Based on X rays of defendant's right leg, Dr. Goldberg stated that defendant had had a fractured femur which required a large steel pin to hold the bone in line. Goldberg testified, through the use of hypothetical questions, that the injury would make performance of several of the sobriety tests difficult. The balancing test, where a person would hold up one leg and count to 30, would be very difficult regardless of which leg bore the weight. The X rays and other reports given to Goldberg showed defendant's right leg to be about one inch shorter than the left. The injury would impair defendant's balance and he would be constantly compensating for it. The heel-to-toe test would also be very difficult to perform. Also, defendant would lean to one side and sway if asked to stand with feet together, head tipped back, eyes closed, and arms out to his sides.

On cross-examination, Dr. Goldberg acknowledged that he had not personally examined defendant. He was not aware of any treatment or therapy defendant had undergone.

Finally, defendant testified. He testified that he went to Ace Liquors at around 11 p.m. on May 31. While there, he had three or four "7 and 7's," consisting of one ounce of whiskey and 7-Up. He left Ace and went to the party between 1 and 1:30 a.m. He testified that he had no problems driving at that time. He stated he drank about half of a quart glass of beer while at the party. Henry poured the other half over him. At that point, defendant and the other two guests went out to the parking lot with a full pitcher of beer. Defendant stated he drank probably one-half of the pitcher. He estimated the time at which he started drinking from the quart glass until he was stopped by Officer Kotte at about 45 minutes to an hour. He stated he had no problem driving after he left the party.

Defendant testified that he saw the police car sitting at the corner. He made the remark about getting rid of the beer. According to defendant, Armstrong, seated in the back seat, proceeded to drink the beer out of the pitcher. Armstrong passed the pitcher up front, and defendant drank as much as he could. He passed the pitcher over to Rader "and that's when the officer was right behind us so Mark [Rader] just sat [sic] it down on the floor." Defendant stated that it was possible the car was swerving as he was nervous and

watching the police car out of the rearview mirror. He cannot see out of his left eye. He did not recall hitting the curb.

Defendant described the accident which resulted in a broken leg. As a result, he limps, and the leg is weaker than the normal one. He stated that he got out of his car as he normally did. He did not recall staggering as he walked. Defendant believed he did touch his nose on the finger-to-nose test.

Defendant stated that he told Officer Kotte that he was not drunk but would probably fail the Breathalyzer test. He testified that he was not drunk that evening.

■■■ It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence. Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. (*People v. Ahern* (1983), 119 Ill. App. 3d. 532, 456 N.E.2d 852.) In this case, defendant was convicted of DUI (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)). In order to prove the offense of DUI, the State must show the defendant drove a motor vehicle at the time and place in question and was, at that time, under the influence of intoxicating liquor. (*People v. Taylor* (1969), 110 Ill. App. 2d 81, 249 N.E.2d 127.) A conviction for DUI may be sustained though based entirely upon the arresting officer's testimony and observation and not upon any scientific evidence of intoxication, such as a breath-analysis test. (*People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852.) A finding of guilty will not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

Defendant argues he was not proved guilty beyond a reasonable doubt because he provided sufficient reasonable explanations for all the indicia of drunkenness described by the police officer. In other words, he argues he provided sufficient explanations for failing most of the sobriety tests. Dr. Goldberg testified that defendant's leg injury caused him to sway and lean to one side if asked to stand still. It would prevent him from standing on one foot and holding the other one off the ground for any period of time. It would prevent

him from pivoting on one foot after walking heel-to-toe. In exiting a car, defendant would require extra support. Defendant limped as he walked.

Defendant cites *People v. Wheatley* (1972), 4 Ill. App. 3d 1088, 283 N.E.2d 279, for the proposition that evidence of a disability that explains the conclusions of a police officer can raise a reasonable doubt that a defendant was driving a vehicle under the influence of intoxicating liquor. In *Wheatley*, the State's sole witness was a police officer. He testified without a proper foundation to the defendant's behavior which gave the officer the opinion that the defendant was intoxicated. The officer had no experience in arresting someone for driving while under the influence. The defendant submitted a letter from his doctor describing a foot ailment. In addition, a witness corroborated the existence of the foot ailment. The court held that the officer's inexperience, the lack of foundation for his opinion, and the evidence of a foot problem forced the court to find that the State failed to prove defendant guilty beyond a reasonable doubt.

The instant case is distinguishable. Officer Kotte's testimony was made with proper foundation. Also, he testified to seeing "a couple hundred" people who were intoxicated through his job. The officer had experience in dealing with intoxicated persons. Moreover, the testimony from Dr. Goldberg is not dispositive of the issue. The doctor testified that defendant would have difficulty performing the tests. He did not say performance would be impossible. Defendant failed all the balance tests, including the one which dealt with upper body coordination. According to the officer, defendant failed to touch his nose as required on one test.

Defendant contends he rationally explained the possible weaving of the car, which caused Officer Kotte to pull his car over. He testified that he saw Officer Kotte's patrol car at the intersection. He then got nervous because of the beer in the car and focused his attention on the patrol car rather than his driving. At some point, too, he was "chugging" from a pitcher of beer. According to defendant, these factors, combined with the lack of sight in his left eye, explain the car's weaving.

Defendant points to several factors that would indicate he was not intoxicated. Officer Kotte testified that defendant was able to recite the alphabet and that he cooperated in everything he was asked to do. Moreover, his behavior was not unusual: no hiccuping, belching, vomiting, fighting, or crying. His speech was fair, and he was able to understand instructions.

Further, defendant and two others testified that defendant had

no problems driving. Defendant presented the testimony of a witness who had knowledge of defendant's behavior when intoxicated, Mark Rader. Rader stated that defendant was not intoxicated that evening.

Defendant argues the statements to Officer Kotte were misinterpreted: Defendant's testimony was that he told the officer he was not drunk but would flunk the Breathalyzer test. He believed he would flunk because he thought one drink would cause the machine to register a high reading.

■ Defendant's arguments do not persuade us that, as a matter of law, the State failed to prove him guilty beyond a reasonable doubt. Essentially, we find the evidence presents a question of deciding between conflicting evidence. In that area, we give deference to the holdings of the trial court. (See *People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852.) Although defendant has offered reasons for almost every aspect of the State's evidence, the fact remains that he failed most of the sobriety tests. He failed all the balance tests. Officer Kotte was experienced in dealing with intoxicated persons. In the officer's opinion, defendant was intoxicated.

In *Ahern*, the appellate court affirmed a conviction for DUI. In that case, the arresting officer testified to defendant's erratic lane crossings over an eight-block stretch of road. The defendant in that case swayed and was unsure of himself while walking. Defendant swayed when doing a heel-to-toe test, although he later, apparently, performed a finger-to-nose test. His speech was "thick-tongued," and he had a strong odor of alcohol on his breath. Two witnesses, who had been drinking with the defendant, testified that they believed the defendant was not intoxicated when he left a bar. The court upheld the lower court, finding the officer's testimony "not so unsatisfactory, unreasonable, or improbable as to raise a reasonable doubt of the defendant's guilt." (119 Ill. App. 3d 532, 536-37, 456 N.E.2d 852, 855.) Based on our review of the record in this case, there is sufficient evidence that a rational fact finder could find defendant guilty of DUI beyond a reasonable doubt. See *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

Defendant argues that much of the evidence he presented was uncontradicted and, therefore, must control. The testimony by defendant and his companions regarding defendant's driving prior to being seen by Officer Kotte and the amount of liquor consumed by defendant that evening is unrebutted. Defendant cites *People v. Flores* (1976), 41 Ill. App. 3d 96, 353 N.E.2d 131, for the proposition that the positive testimony of a witness, uncontradicted, and unim-

peached, either by other positive testimony or by circumstantial evidence, cannot be disregarded but must control the decision, unless it is inherently improbable.

Defendant improperly applies the principle to the facts of this case. In question is whether the offense of DUI was proved beyond a reasonable doubt. The police officer testified that defendant exhibited signs of intoxication. This testimony relates directly to the elements of the DUI offense. Defendant's testimony and that of his witnesses related to the elements, also. The evidence as to the elements of this offense is conflicting. In addition, all of the testimony must pass the scrutiny of the fact finder as to credibility and weight.

If we accept defendant's argument that unrebutted testimony of defendant's witnesses must control, the burden placed on law-enforcement officials to halt intoxicated drivers would be impossible. Any excuse invented by a defendant and substantiated by others could prevent a conviction. We reaffirm the cases that hold a conviction may be based solely on the arresting officer's observation and testimony. See *People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852.

The second alleged error defendant raises pertains to Officer Kotte's opinion of defendant's condition. On direct examination, Officer Kotte testified: "It was my opinion that [defendant] was intoxicated and unfit to drive." Defendant objected to the opinion on fitness to drive. The court allowed the answer to stand "for what it was worth."

The error, if any, was harmless. The court indicated the statement had little probative value. A trial judge, in a bench trial, is presumed to have considered only properly admitted evidence. *People v. Eddmonds* (1984), 101 Ill. 2d 44, 461 N.E.2d 347, *cert. denied* (1984), 469 U.S. 894, 83 L. Ed. 2d 207, 105 S. Ct. 271.

For the foregoing reasons, the order of the circuit court of McLean County is affirmed as to the conviction and sentence for DUI. The conviction for BAC greater than .10 is vacated.

Affirmed in part and vacated in part.

SPITZ, P.J., and GREEN, J., concur.