THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN GENEVA, Defendant-Appellant.
First District (6th Division)   No. 1—88—1663

Opinion filed April 16, 1990.

Randolph N. Stone, Public Defender, of Chicago (Stephanie L. Ellbogan, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Diann Doppelt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, John Geneva, was convicted of aggravated criminal sexual assault, criminal sexual assault, unlawful restraint, and aggravated battery. The trial court sentenced him to serve concurrent terms of 15 years, 10 years and 3 years, respectively, on the first three convictions and sentenced him to a five-year term for aggravated battery, that term to be served consecutively. Defendant alleges the following errors on appeal: that the trial court abused its discretion in denying defendant's motion for a new trial based on newly discovered evidence; that the State failed to prove him guilty of aggravated criminal sexual assault beyond a reasonable doubt; that the trial court improperly convicted him of aggravated criminal sexual assault and the lesser included offenses of criminal sexual assault and unlawful restraint; that the trial court improperly considered that complainant was injured as an aggravating factor when sentencing defendant to a term of five years for aggravated

battery; that the trial court improperly sentenced defendant to a consecutive term for aggravated battery; and that the trial court abused its discretion in imposing the total sentence.

The following testimony was elicited at trial. Complainant testified that she met defendant in the summer of 1984 and that they dated until October 1985.

On February 21, 1986, defendant called complainant at work and asked if she wanted to go out dancing with friends. She agreed to go and agreed to pick defendant up at his house because his car was not working. Complainant arrived at defendant's house at approximately 6 p.m. When defendant came out of the house, he was carrying a shovel. Defendant told her he had to drop the shovel off at a friend's house. Defendant put the shovel in the trunk and got in the driver's side of the car. Complainant stated that he normally drove her car. She also noticed that he had a gun. When she asked him what the gun was for, defendant said he had to drop it off at a friend's house.

Defendant drove toward the Melrose Park Inn. Previously, defendant had told complainant that they were going to a hotel to a party before going dancing. Defendant registered at the motel, parked the car, and told complainant to get out. He directed her to room 238 and followed her up the stairs to the room.

When they arrived in the room, defendant told complainant to get comfortable and to watch some television. She took off her shoes, sat on the bed and began to watch television. Defendant went into the bathroom. When he came out a few minutes later, he was fully clothed, but complainant recalled that he looked like a different person.

Complainant testified that defendant told her to take her clothes off and when she refused, he threatened to hurt her. She then heard clicking noises, similar to metal hitting metal. She stated that defendant pushed her on the bed and started taking her shirt off. She began crying and screamed at defendant. Defendant told her to shut up so other people could not hear her screams. Defendant then removed their clothes. He placed the gun on the floor at the foot of the bed. It was the same gun she had seen when defendant first got into her car.

Complainant stated that defendant knelt on her shoulders, pushed her face toward him and tried to force her to have oral sex with him. Complainant refused and kept turning her head away. Defendant got on top of complainant and had vaginal intercourse with her. He then turned her over and had anal intercourse with her. Complainant was crying, and defendant told her to be quiet. When she tried to scream, defendant put his hand over her mouth.

After the act, complainant put her shirt on and noticed that she was bleeding from between her legs. Defendant brought complainant her clothes and told her to hurry up because they were running late. Complainant did not know to what defendant was referring. Complainant finished dressing in the bathroom and put a piece of toilet paper in her underwear to stop the bleeding. Defendant directed her to be quiet and threatened to hurt her if she screamed or said anything when they left. He then messed up the bed and walked out of the room. They were in the motel room for approximately one half hour. She noted that as they left she saw the outline of the gun behind defendant's trousers.

They entered the car, and defendant began to drive north on Mannheim Road. Complainant asked him why he was doing this to her, and he replied that he loved her. When complainant looked out the window, defendant told her to stop in case people saw her crying.

When they reached Irving Park Road near O'Hare airport, defendant pulled the car onto the shoulder. He got out of the car and took the keys from the ignition. He opened the trunk of the car and removed the shovel. Complainant stated that defendant pulled her out of the car and pushed her down to a ditch. He told her that "[i]f it's not there, it's your fault. We are running late." Complainant did not know to what he was referring. Defendant attempted to dig a hole in the ditch but was unsuccessful as the ground was frozen.

Defendant told complainant to stand by a nearby tree. When she asked him if they ever were going out with friends, defendant replied that they were not and that he "had this planned out pretty good." Complainant asked if he was going to shoot her. Defendant replied, "No, I don't want people to know it's my bullet inside of you because I love you." Complainant told defendant she wanted to go home. She then took her shoes off so she would be able to run if she had the opportunity to do so. Defendant squatted on the ground with his left hand on the back of complainant's coat. He told her that they would leave after the last set of cars passed. When complainant saw the last car go by, she told defendant that she wanted to leave. She then felt what appeared to be defendant punching her in the stomach. She saw a knife lying on the ground, and she tried to grab it and throw it over the fence. Before she was able to do so, defendant tackled her and threw her to the ground.

Complainant testified that she ran out into the street, but no cars would stop. She attempted to get into her car, but defendant pulled her out and hit her head on the roof of the car. He tried to pull her into the ditch, but she held onto the bumper and screamed. She stated

that defendant began to break down. He kissed her cheeks and told her that they both needed help. She then realized that defendant had stabbed her in the stomach. She told defendant to get away from the car. He started the car and offered to drive her to the hospital. He asked if she wanted her shoes, and she replied that she did. When defendant went in the ditch to get her shoes, complainant got into the car, locked the doors and drove to Westlake Community Hospital.

Susan Sacco, a registered nurse at Westlake Hospital, treated complainant in the emergency room at 7:20 p.m. Sacco testified that complainant said that her ex-boyfriend raped and stabbed her. The emergency room staff pumped her stomach to ensure that she had no internal bleeding. Complainant's blood pressure dropped, and she complained that she was nauseated and proceeded to vomit. Sacco prepared the Vitullo kit to test for any evidence of blood or semen on vaginal slides. Complainant had not informed Sacco that she had been anally penetrated. Complainant was admitted to the intensive care unit of the hospital and remained there for two days. She was a patient in the hospital for four more days.

Officer Larry Piemonte testified that he spoke with complainant on February 21, 1986. Complainant told him that defendant had sexually assaulted her but did not specify what type of intercourse had occurred. She stated that she and defendant went to the motel because defendant had a change of clothing in one of the rooms. She also told him that defendant had a gun, but that she first observed the gun as defendant was opening the door to the motel room. When Piemonte first spoke with complainant at the hospital, he took notes and then wrote his police report at the police station.

Detective Hillard Pulikowski testified that on February 21, he talked to complainant at Westlake Hospital. Complainant told him that she and defendant were going to "Rocky's" first, but that defendant instead drove to the motel. She told Pulikowski that she first saw defendant with a gun when she went to pick him up. Complainant told Pulikowski that defendant had raped her vaginally and anally, and that he had hurt her.

Defendant testified in his own behalf. Defendant stated that he and complainant engaged in consensual sexual intercourse that night and that they had engaged in sexual intercourse on prior occasions in complainant's car. On the day of the occurrence, complainant called him, and despite the fact that he told her he was going out with some friends, she appeared at his door that evening. She sat in his living room for approximately 15 minutes, and they then left his house. Complainant drove the car, and they proceeded directly to the motel.

Defendant exited the car and went to get a room.

In the room, they sat down on the bed and began watching television. Defendant began kissing complainant. They engaged in foreplay and then vaginal intercourse. Defendant denied having anal intercourse with complainant. He further denied that complainant asked him to stop or to leave, or that she screamed and cried. Defendant informed complainant that she was bleeding. Complainant went into the bathroom to get dressed. When she came out, they left the motel.

Defendant stated that complainant drove from the motel to the outskirts of O'Hare airport. She pulled over to the side of the road, and they exited the car. They began discussing defendant's girlfriend. When he told complainant that he and his girlfriend had broken up but still saw each other on and off, complainant became upset.

Defendant testified that at this point, he pulled a knife from his pocket in order to clean his nails. As he was doing so, defendant told complainant that he no longer wanted to see her. Complainant began to walk away, and defendant grabbed her right arm and yanked her towards him. He stated that she fell into the knife. He dropped the knife and asked if she was all right. She responded that she did not know. He offered to take her to the hospital, but she refused and told him to leave her alone. She went to the driver's side of her car and asked defendant to get her shoes. As he did so, she drove away. Defendant stated that he had neither a gun nor a shovel. He further stated that he never struck complainant.

After complainant left, defendant's friend, Vito Roberto, picked him up. Defendant tried to locate complainant to see if she was all right. He and Roberto first went to Gottlieb Hospital and then to Westlake Hospital. Defendant did not enter the hospital because he was scared. He testified that when he discovered that complainant had been injured he was hurt and upset. Defendant turned himself in and was arrested on March 1, 1986.

The parties stipulated that if called to testify at trial, Morris Tomasec would testify that he was employed at the Melrose Park Inn on February 21, 1986. He also would testify to a receipt filled out and signed by defendant and to the receipt of $25 for room 238.

The parties further stipulated that the Vitullo evidence collection kit was packed by Sacco prior to her turning it over to Detective Pitassi. Pitassi brought that kit back to the police station, where it was put into an evidence locker. The kit subsequently was transferred to Mohammed A. Tahir, a forensic scientist, who identified seminal material on a vaginal swab, a vaginal smear, and a cervical smear.

The parties also stipulated that if called to testify at trial, Dr. Ga-

foor of Westlake Hospital would testify that he treated complainant. Complainant had a stab wound to the upper abdomen and several cuts on her right hand and chest. Pursuant to his orders, complainant was put on a cardiac monitor and was given an EKG, an ice-pack for her right upper-shoulder area, and two intravenous solutions. Pre-operative work and X rays were ordered.

In his appeal, defendant first contends that the trial court abused its discretion in denying his motion for a new trial based on newly discovered evidence. Defendant maintains that a statement which complainant made about defendant eight months prior to the occurrence undermines her credibility and requires that this court remand for a new trial.

■ In order to warrant a new trial, newly discovered evidence must be of such conclusive character that it probably will change the outcome of the trial, must be material to the issue but not merely cumulative, and must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. (*People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199.) Defendant has failed to meet these requirements.

■ The evidence which defendant maintains requires a new trial is the following statement made by complainant: "I can't stand the girl that [defendant] is with now and if I can't have him I don't want anyone else to." This statement simply is not of such conclusive character that it would change the outcome of the trial. Moreover, the jury heard ample evidence of the parties' relationship and, accordingly, complainant's statement was merely cumulative insofar as it suggests that she may have had a motive to lie. Finally, this statement is not of such character that it could not have been discovered prior to trial by the exercise of due diligence. The witnesses at the time of the statement were defendant's brother, defendant's girlfriend and another friend. There has been no showing that these parties were not available to defendant prior to and during the trial. Accordingly, we find that the trial court properly denied defendant's motion for a new trial based on newly discovered evidence.

Defendant next contends that he was not proved guilty of aggravated criminal sexual assault beyond a reasonable doubt. He alleges that the State's evidence was insufficient and that complainant's testimony was incredible.

■ A reviewing court will not reverse a conviction unless, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d

1, 538 N.E.2d 461.) It is the function of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852.) When there is a conflict in the testimony, it is the duty of the trier of fact to resolve the conflict and to determine which witnesses are credible. (*People v. Rynberk* (1980), 92 Ill. App. 3d 112, 415 N.E.2d 1087.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to raise a question of reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Moreover, a conviction for aggravated criminal sexual assault, where defendant denies the charge, will be upheld when there is either some corroboration of the prosecuting witness or where that testimony is otherwise clear and convincing. (*Cf. People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.) The testimony of the complaining witness, however, need not be perfect in order to be deemed clear and convincing. (*People v. Powell* (1985), 138 Ill. App. 3d 150, 485 N.E.2d 560.) If the victim's testimony is clear and convincing, her testimony alone will suffice to sustain the conviction. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019; *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 481 N.E.2d 883.) We find that complainant's testimony, together with other evidence presented at trial, amply supports defendant's conviction for aggravated criminal sexual assault. See Ill. Rev. Stat. 1985, ch. 38, par. 12—14.

Complainant testified that defendant called to invite her out and that she agreed to go out with him. She picked him up at his home and observed that he had a shovel and a gun. She willingly went with defendant to the motel because she believed that she and defendant were to meet friends there. When defendant demanded that she take off her clothing, however, she protested. She continued to protest when defendant attempted to force her to have oral sex with him and when defendant forced her to have vaginal and anal intercourse with him. Complainant noted that before these acts occurred, she heard the sound of metal clicking and that she observed defendant place his gun at the foot of the bed.

Defendant testified that he did not have a gun and that he and complainant had consensual vaginal intercourse. He denied that they had anal intercourse. Defendant argues that his version of the incident is more credible than that of the complainant and, in support of

this argument, cites *People v. Jackson* (1989), 178 Ill. App. 3d 785, 533 N.E.2d 996, for the proposition that it is inconceivable that a rapist would take his victim to a hotel where he easily could be detected. The *Jackson* case, however, is distinguishable. There, a prostitute admitted she suggested to the defendant that they have sexual intercourse in a parking lot. Thus, the *Jackson* complainant clearly consented to the idea of sexual intercourse. Complainant here did not consent to sexual intercourse. The *Jackson* case does not require us to reverse defendant's conviction.

Defendant nonetheless maintains that complainant's testimony was not clear and convincing, and resulted more from the prosecutor's leading and improper questions than from her independent recollection of the incident. We do not agree. Whenever defense counsel objected to leading and improper questioning, the trial court sustained those objections, and the jury was instructed to disregard the questions. Complainant presented a reasonable account of the events of February 21, 1986. The fact that there were discrepancies does not detract from the reasonableness of that account. See *People v. Nelson* (1986), 148 Ill. App. 3d 811, 499 N.E.2d 1055.

■■ ■ Defendant additionally argues that there is no evidence to suggest the use of force. However, when examining the amount of force required to sustain a rape conviction, each case must be examined on the basis of its own particular facts. (*People v. Dick* (1987), 153 Ill. App. 3d 670, 505 N.E.2d 1157.) Resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, such as where the assailant is armed with a deadly weapon. (*People v. Nelson*, 148 Ill. App. 3d 811, 499 N.E.2d 1055.) The force element of rape does not depend for its proof on actual physical damage to bodily tissue, and a rape victim is not required to subject herself to serious physical bodily harm by resisting in order to establish that intercourse was nonconsensual. Moreover, it is not required that the victim physically resist before it may be said that a rape has occurred. *People v. Nelson*, 148 Ill. App. 3d 811, 499 N.E.2d 1055.

■■ Complainant knew that defendant was armed with a deadly weapon and heard clicking noises. Thus complainant reasonably could have concluded that her life was endangered. Furthermore, complainant testified that she refused to take off her clothing, and that she struggled, screamed and cried throughout the incident. Defendant held his hand over her mouth to stifle her screams and cries. Complainant's testimony adequately established that defendant used force to sexually assault her.

■■ Moreover, the physical evidence supports complainant's version of the events. Complainant was treated for cuts on her chest and for injuries to her right shoulder. Further, the bloody toilet paper found in her underwear was entered into evidence. This evidence supports complainant's testimony regarding her struggle as defendant forced her to engage in intercourse. We believe this evidence in conjunction with complainant's testimony establishes defendant's guilt beyond a a reasonable doubt.

Defendant contends, however, that complainant's testimony regarding the presence of the gun was replete with inconsistencies and contradictions. Defendant points to the fact that complainant told Pulikowski, and testified at trial, that she first observed defendant's gun when he entered her car that evening, but that she told Piemonte, the first person to interview her, that she first observed defendant's gun when he was opening the door of the motel room. Defendant further notes that no gun was recovered in connection with this incident. Accordingly, defendant concludes that aggravated criminal sexual assault was not proved beyond a reasonable doubt.

■■ A conviction for aggravated criminal sexual assault requires that the accused "displayed, threatened to use, or used a dangerous weapon" during the commission of criminal sexual assault. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1).

■■ Complainant testified that she first saw the gun when defendant entered her car that evening and that she next saw the gun in the motel room. She stated that defendant threatened to hurt her if she did not undress and that she then heard clicking noises similar to metal hitting metal. Defendant then put the gun on the floor. She again saw the gun as the two left the motel room. Complainant's testimony sufficiently establishes that defendant displayed a gun during the commission of criminal sexual assault. The inconsistencies in the testimony regarding complainant's first view of the gun do not detract from the reasonableness of complainant's account. (*People v. Nelson*, 148 Ill. App. 3d 811, 499 N.E.2d 1055.) This court will not substitute its judgment for that of the trier of fact and, accordingly, will not disturb the jury's conclusion that defendant was guilty of aggravated criminal sexual assault.

Defendant next contends that the trial court improperly convicted and sentenced defendant for both aggravated criminal sexual assault and criminal sexual assault. Similarly, he contends that the trial court improperly convicted and sentenced him for both aggravated criminal sexual assault and unlawful restraint. Defendant maintains that both criminal sexual assault and unlawful restraint are lesser included of-

fenses of aggravated criminal sexual assault. The State counters that defendant has waived appeal of these issues by his failure to object at trial or to raise the issue in his motion for a new trial. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Nonetheless, we will address defendant's contentions. See 107 Ill. 2d R. 615(a).

■■ When a defendant is found guilty of two offenses, one of which is a lesser offense of the other, the court shall enter judgment and impose sentence on only the more serious offense. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) Both criminal sexual assault and unlawful restraint are lesser included offenses of aggravated criminal sexual assault. (See *People v. Boyer* (1985), 138 Ill. App. 3d 16, 485 N.E.2d 460; *People v. Allman* (1989), 180 Ill. App. 3d 396, 535 N.E.2d 1097.) Accordingly, defendant's convictions for those offenses were improper. We vacate defendant's convictions and sentences for criminal sexual assault and unlawful restraint.

Defendant argues that in light of the impropriety of his convictions for criminal sexual assault and unlawful restraint, this court must remand the matter for resentencing. We disagree.

■■ A remand for resentencing is not required on the conviction which is affirmed when a separate sentence has been imposed for each offense. (*People v. Poe* (1984), 121 Ill. App. 3d 457, 459 N.E.2d 667.) When there is no indication from the record that a vacated conviction had any bearing on the sentence for the affirmed conviction, it is not necessary to remand the cause for resentencing. *People v. Einstein* (1982), 106 Ill. App. 3d 526, 435 N.E.2d 1257.

■■ Our review of the record reveals no indication that the sentence for aggravated criminal sexual assault was in any way influenced by the two other convictions. The trial court imposed sentences which were within the permitted range for each offense. This court cannot conclude, solely from the trial court's simultaneous imposition of separate sentences for multiple convictions, that the sentence imposed for one offense has been influenced by the imposition of sentence for the other offenses. (See *People v. Martin* (1984), 121 Ill. App. 3d 196, 459 N.E.2d 279.) Accordingly, we will not disturb defendant's sentence for aggravated criminal sexual assault.

Defendant also contends that the trial court improperly considered complainant's injury as an aggravating factor when sentencing defendant to a term of five years for aggravated battery. In support of this contention, defendant argues that the following comment reflects the trial court's improper focus on this factor: "It's a very difficult sentence, sir, but we have a victim who was injured, stabbed. Could have been dead. Isn't."

██ Generally, the trial court is in the best position to evaluate sentencing factors, and its sentencing determination will not be disturbed absent an abuse of discretion. (*People v. Moore* (1983), 115 Ill. App. 3d 266, 450 N.E.2d 855.) The trial court properly may consider the particular circumstances of the individual case when fashioning its sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Moreover, it is proper to consider certain aggravating factors, including the fact that defendant's conduct caused or threatened serious harm. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)(1); *People v. Childs* (1981), 101 Ill. App. 3d 374, 428 N.E.2d 185.

Defendant nonetheless argues that it is improper to consider in aggravation a factor which is implicit in the charged offense. (See *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) Thus defendant concludes that because an injury is implicit in the offense of aggravated battery, the trial judge should not have considered it.

██ Here, the trial court considered that complainant was injured and could have died as a direct result of defendant's commission of aggravated battery. The harm threatened or inflicted during the commission of an aggravated battery is not a static factor, but rather is one which varies from case to case. Aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(e)), with a permissible sentencing range of three to five years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(6)). While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the degree of harm caused to the victim and therefore, may be considered as an aggravating factor in determining the exact length of a particular sentence. (*People v. Childs*, 101 Ill. App. 3d 374, 428 N.E.2d 185.) We believe the sentencing range permits the trial court to consider fluctuating terms such as the degree of harm caused by a defendant's conduct. Thus, we find that the trial court properly considered that complainant was harmed when imposing sentence on defendant. We hold that defendant's five-year term for aggravated battery was proper.

Defendant next contends that the trial court erred in ordering defendant to serve his five-year term for aggravated battery consecutively to his 15-year term for aggravated criminal sexual assault. He argues that these sentences should be modified to run concurrently. We agree.

██ A court shall not impose a consecutive sentence unless "it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b).) Consecutive sentences should be imposed spar-

ingly. *People v. O'Neal* (1988), 125 Ill. 2d 291, 531 N.E.2d 366.

■■■ Here, at the time of the commission of the crimes, defendant was 22 years old. At the time of the sentencing, he was 24 years old. Defendant had no prior criminal record. Both of his parents testified in mitigation at the sentencing hearing and demonstrated a strong and supportive family. We do not believe that consecutive sentences are necessary to protect the public.

In view of our holding regarding the imposition of a consecutive sentence, it is unnecessary to consider defendant's final contention that the trial court abused its discretion in imposing a total term of 20 years' imprisonment.

In sum, defendant's convictions for aggravated criminal sexual assault and aggravated battery, and the accompanying sentences of 15 and 5 years' imprisonment, are affirmed. The sentence for aggravated battery is modified to run concurrently with the sentence for aggravated criminal sexual assault. Defendant's convictions for criminal sexual assault and unlawful restraint are vacated.

Judgments affirmed in part and vacated in part.

LaPORTA, P.J., and RAKOWSKI, J., concur.