THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CARLOS GUTIERREZ, Defendant-Appellant.

First District (4th Division)    No. 1—90—0105

Opinion filed November 12, 1992.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Brian Clauss, and Annette Milleville, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Carlos Gutierrez, was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14), aggravated kidnapping (Ill. Rev. Stat. 1987, ch. 38, par. 10—2), kidnapping (Ill. Rev. Stat. 1987, ch. 38, par. 10—1), and false personation of the police (Ill. Rev. Stat. 1987, ch. 38, par. 17—2). He was acquitted of the robbery charge. Defendant was sentenced to 16 years in the Department of Corrections for aggravated criminal sexual assault and various counts of kidnapping. He was also sentenced to a concurrent three-year term for false personation of a peace officer. Defendant now appeals his convictions.

On appeal, defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault; (2) the trial court erred in admitting evidence of an eight-year-old incident where he had posed as a peace officer and attempted to force a woman and her young child into his car; (3) the trial court erred in admitting complainant's statements to her mother, overheard by a witness for the State; (4) the prosecutor's comments during closing arguments denied him a fair trial; (5) the trial court abused its discretion in imposing a sentence above the minimum statutory requirement; (6) the cumulative effect of trial errors denied him a fair trial; and (7) he was entitled to a hearing regarding his fitness to stand trial.

We affirm.

On the evening of November 23, 1988, the 25-year-old complainant and her 18-month-old son were waiting for the "El" at 19th and California Avenue, in Chicago, after leaving her mother's home. Because it was cold, complainant decided to take the bus. As she began walking toward the bus stop, defendant drove up and offered her a ride. She accepted a ride to Jackson Street. Shortly after they drove off, defendant pulled out what appeared to be a police badge. Complainant testified that defendant told her that he was an undercover policeman. He told her that he would take her to jail for prostitution and that her baby would be taken from her unless she agreed to cooperate.

Defendant turned into a vacant lot at Taylor Street. He threw complainant's baby into the back seat and then forced complainant to engage in oral and vaginal sex. She asked defendant why he was doing this to her. She testified that he responded, "You know why." Complainant further testified that he was unconcerned when she told

him shortly before they had intercourse that she was two months pregnant.

After having intercourse in the car, defendant complained that the car was not big enough and that they were going to a hotel. At this point, the baby began to cry. When complainant reached for the baby, defendant slapped her hand and handcuffed her left wrist while holding onto the other end of the cuff. Defendant took the $10 complainant had borrowed from her mother and drove to a hotel. He stopped at a pay telephone nearby and told complainant that she was allowed one call. Defendant led her out of the car, leaving her baby behind. Complainant tried to call her mother, but after the telephone rang twice defendant hung up the receiver. Complainant's mother later testified that the telephone did ring around the time her daughter indicated, but when she picked up the receiver no one was on the line.

After leaving the public telephone, defendant and complainant returned to the car. Complainant was handcuffed to the steering wheel while defendant checked into the hotel. In his own defense, defendant testified that it was complainant who was initially curious about the handcuffs and that she voluntarily offered her left wrist to try them out. However, the witness stated that it must have been laziness or stupidity that prompted him to attach the other cuff to the steering wheel.

Complainant was able to free herself by squeezing her hand out of the handcuff, which resulted in scratches to her wrist and hand. Police officers Steven Tribe and Patrick O'Donovan confirmed the injuries to complainant's hand. After escaping with her child, complainant began knocking on doors in the area, begging for help. Finally, Patrick O'Reilly agreed to allow her to use his telephone. O'Reilly heard complainant tell her mother how she had been raped. He then spoke to her mother and decided to bring complainant home himself.

Complainant's mother testified as to the conversation with her daughter. The witness stated that complainant was crying, upset, and said she had been raped. When complainant was returned home, her mother called the police. Officer Tribe testified as to the events leading to the arrest of defendant. Complainant identified defendant's red car parked outside of a tavern. Officers Tribe and O'Donovan entered the tavern and saw the handcuffs on defendant's person. After arresting him, they found the wallet containing the fake police badge. When the police brought the defendant out of the tavern, complainant identified him as the man who raped her. Later, defendant told police that he was a security guard at a Zayre department store.

At trial, defendant testified in his own defense. He stated that complainant told him that he could have a "date" for $10. He further testified that the intercourse between them was consensual and that it was her decision that they continue in a hotel.

Felisitas Huertas, an immigrant from Mexico, also testified for the State. On May 28, 1980, she was walking with her one-year-old daughter shortly after midnight. At the intersection of Campbell and Taylor Streets, a man got out of a red car and told her that he was from "Immigration." He wanted money and if she refused they were going to go to her house to get her "papers." He then grabbed Huertas and attempted to drag her to his car. She identified defendant as the man who approached her.

First defendant contends that the State failed to prove him guilty beyond a reasonable doubt. We begin our analysis with the standard of review. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Young* (1989), 128 Ill. 2d 1, 49, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

In the case at bar, defendant was charged with various counts of criminal sexual assault. Despite defendant's denial of guilt, the charges may be upheld if there is "some corroboration of the prosecuting witness or where that testimony is otherwise clear and convincing." (*People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1026.) An even more recent case reads: "If the victim's story is consistent and any discrepancies do not detract from its reasonableness, the victim's testimony can be clear and convincing." *People v. Stengel* (1991), 211 Ill. App. 3d 337, 345.

■ Here, complainant gave a thorough account of the incident which took place on November 23, 1988. There was also corroboration of her account by her mother with whom she spoke over the telephone shortly after the rape. O'Reilly, who let complainant use his telephone when she banged on his door for help, corroborated her story. Complainant's story was also corroborated by Officer Tribe, who responded when complainant's mother reported the incident to the police.

Defendant argues that he did not physically force complainant to perform any sex acts. The facts of each individual case are examined when determining the force required to sustain a rape conviction. (*People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1027.) A recent explanation of the threat of force is as follows:

"Currently, relative to the issue of force, failure to cry out or failure to resist does not establish consent in sex cases if the woman is threatened or in fear of being harmed. Even disrobing and a plea not to be hurt have been held insufficient to negate force or lack of consent." *People v. Stengel* (1991), 211 Ill. App. 3d 337, 345.

In the instant case, defendant showed complainant a badge, told her he was an undercover policeman and threatened to arrest her for prostitution and take her baby away if she did not cooperate. At this point, she was in a moving car and her baby had been thrown into the back seat. In response to her pleas, the defendant continued his threats to take her to jail and have her baby taken from her. Complainant's testimony established defendant's use of force to sexually assault her.

The physical evidence also supports complainant's version of the story. She was handcuffed to the steering wheel of defendant's car while he went to register at the hotel. This was complainant's first opportunity to escape and she did so. However, she suffered scratches and scarring to her hand as she squeezed it through the handcuff. These injuries were noted by complainant's mother later at the hospital and by Officer Tribe. The physical evidence in addition to complainant's testimony establishes defendant's guilt beyond a reasonable doubt.

Second, defendant contends that the trial court erred in admitting evidence of an eight-year-old incident where defendant posed as a peace officer and attempted to force a woman and her young child into his car. One of the cases defendant cites to support his argument is *People v. Gibbs* (1992), 226 Ill. App. 3d 1068. However, *Gibbs* may be distinguished from the instant case. In *Gibbs*, the trial court improperly relied upon the rule formulated in *People v. Montgomery* (1971), 47 Ill. 2d 510. The *Gibbs* court stated the *Montgomery* rule as follows:

"[P]rior convictions may be admitted if (1) the prior offense was punishable by imprisonment in excess of one year or involved dishonesty, and (2) if either the conviction or the release from confinement occurred within the preceding 10 years. If these two requirements are met, the trial court must then weigh the probative value of the evidence against what prejudicial effect the evidence might have on the trier of fact." (*Gibbs*, 226 Ill. App. 3d at 1072.)

This rule was not applicable in our case, and the trial court did not rely on it when admitting the testimony of Huertas. Further, the ear-

lier incident involving Gibbs was not found similar enough to the incident on appeal to merit admission under the other crimes rules. Unlike the court in *Gibbs*, we find the testimony concerning defendant's previous incident to be remarkably similar to complainant's testimony as to what occurred on the evening of November 23, 1988.

The prosecution may admit evidence of other crimes, wrongs or acts when relevant for any other purpose than to show a disposition to commit crime, such as *modus operandi*, intent, identity, motive or absence of mistake. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5 (5th ed. 1990).) In the instant case, the State argues that the testimony of Huertas was admissible to show any absence of mistake and *modus operandi*.

The conflict within the first district on the issue of the admissibility of "other crimes" evidence was explained in *People v. Brown* (1991), 214 Ill. App. 3d 836, 845. *Brown* cited *People v. Barbour* (1982), 106 Ill. App. 3d 993, for the proposition that testimony will not be admitted under the *modus operandi* exception unless the identity of defendant is at issue. The alternative proposition is based on the holdings in *People v. Fuller* (1983), 117 Ill. App. 3d 1026, and *People v. Kimbrough* (1985), 138 Ill. App. 3d 481. *Brown* summarized the reasoning in *Fuller* and *Kimbrough* as follows:

> "These courts reasoned that the relevancy of *modus operandi* evidence is not limited to the identity of the accused, but is also relevant and admissible on the distinct issue of whether a crime was committed at all." (*People v. Brown* (1991), 214 Ill. App. 3d 836, 845.)

*Brown* found that the latter proposition has been more frequently adopted by our appellate courts.

■ Here, there are definite similarities between the crime charged and the incident described by Huertas. Complainant and Huertas were both minority women in their midtwenties and both had a young child with them at the time they were approached by defendant. Defendant showed both women a fake silver star badge. Defendant asked both women for money. Finally, both incidents occurred on a weekday afternoon within a few blocks of each other. In reviewing the admission of evidence, we will defer to the discretion of the trial court unless an abuse of discretion has been shown. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 490.) In this case, we find that the "other crimes" testimony proved defendant's *modus operandi*, which bears upon his guilt. Thus we hold that the trial court has not abused its discretion.

Defendant's third contention on appeal is that the trial court erred in admitting complainant's statements to her mother, overheard by a witness for the State. Defendant now argues that O'Reilly's recounting of complainant's telephone conversation with her mother constituted inadmissible hearsay which resulted in defendant being denied a fair trial.

■ The law is clear with respect to what is necessary to preserve a question for review on appeal. *"Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial."* (Emphasis in original.) *(People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Defendant failed to object to O'Reilly's testimony at trial. Further, the record does not indicate any discussion of this issue in defendant's post-trial motion. We therefore find that the issue is waived on appeal.

However, defendant then argues we should review this issue under the plain error doctrine. This doctrine allows evidence that is ordinarily waived on review to be admissible if the evidence is so closely balanced that the conviction may have been due to error that is evident from the record or the error resulted in defendant being denied a fair trial. *(People v. Palmer* (1989), 188 Ill. App. 3d 414, 422.) In the instant case, we do not find that the evidence was so closely balanced as to merit review under the plain error doctrine. Thus, defendant's argument concerning O'Reilly's testimony is waived on appeal.

Defendant's next argument on appeal is that the prosecutor's comments during closing arguments denied defendant a fair trial. Again defendant failed to preserve this issue for appeal. He neither objected at trial nor raised the issue in a written post-trial motion. *(People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In response, defendant argues that this issue should be reviewed under the plain error doctrine. Here we find that the evidence is not so closely balanced as to merit review under this doctrine.

The comments made by the prosecutor during closing arguments read as follows:

"Now you've heard the whole nightmare; all the evidence is in. [Complainant] has come in here and told you about what's probably the most awful and embarrassing thing she's ever had to tell anyone about, to you strangers. It is hard to imagine something such as this if you've never experienced it, but try if you can to think of the humiliation and the shame and disgust [complainant] felt being raped by this man (Indicating) and the continued shame, humiliation she's had to go through since then."

■ Prosecutors are given wide latitude in their closing arguments, and the propriety of their comments is left to the discretion of the trial court. (*People v. Howard* (1991), 209 Ill. App. 3d 159, 182.) Here, the trial court did not find that the comments made were improper nor did the defense counsel choose to object to the comments at the time of trial. A recent first district case explains what is necessary to effect a reversal in this instance. It reads as follows:

"To merit a reversal a prosecutor's improper comments must be of 'substantial magnitude' when viewed in the context of the entire record and argument. [Citation.] If the improper comments did not constitute a material factor in the conviction of the defendant, the verdict will not be disturbed." (*People v. Graca* (1991), 220 Ill. App. 3d 214, 221.)

Here, we find that the prosecutor's comments did not constitute a material factor in the conviction of defendant. Given this reason and the fact that this issue is waived on appeal, we will not disturb the decision of the trial court.

The fifth issue on appeal is whether the trial court abused its discretion by imposing a sentence above the minimum statutory requirement. Courts of review give deference to a trial court's sentencing decisions. (*People v. Streit* (1991), 142 Ill. 2d 13, 18.) In order to determine whether a sentence is excessive, this court must ask whether the trial court abused its discretion.

■ In the instant case, defendant was sentenced to 16 years in the Illinois Department of Corrections. A sentence of imprisonment for a Class X felony is between 6 and 30 years. Thus, defendant's 16-year sentence is entirely within the statutory limits. The record indicates that, in determining the sentence, the trial judge considered the circumstances of the incident, defendant's background, as well as defendant's lack of remorse. The reasons for giving great weight to the considerations of the trial judge are as follows:

"A trial judge is in a far better position than an appellate court to fashion an appropriate sentence, because such judge can make a reasoned judgment based upon firsthand consideration of such factors as 'the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age' [citation]; whereas the appellate court has to rely entirely on the record." *People v. Streit* (1991), 142 Ill. 2d 13, 19.

In the case at bar, the judge was able to make his determination based on firsthand knowledge of defendant. Further, in balancing the factors listed above, the trial judge gave defendant a sentence that was within the statutory limits. As a court of review, we will not ov-

erturn defendant's sentence merely because our weighing of the relevant factors might have been different. (See *Streit*, 142 Ill. 2d at 19.) We therefore affirm defendant's sentence.

For his sixth issue on appeal, defendant wants this court to consider the cumulative effect of all of the previously mentioned errors. He argues that their cumulative effect was to deny him a fair trial. We disagree.

In some circumstances, "trial errors may have a cumulative effect when considered together." (*People v. Albanese* (1984), 102 Ill. 2d 54, 83.) We find that the errors did not have that effect in this case. The first district has stated that "[a]lthough defendant is guaranteed a fair trial, this does not mean that the trial must be perfect." *People v. Olesch* (1986), 143 Ill. App. 3d 577, 588.

Here, complainant's testimony was detailed in describing what happened on that night in November, after she had accepted a ride from defendant. The law concerning the validity of complainant's testimony is as follows: "[T]he testimony of a single witness is sufficient to convict if the witness is credible and if the witness viewed defendant under conditions permitting a positive identification to be made." *People v. Williams* (1991), 221 Ill. App. 3d 1061, 1067.

■ In the instant case, complainant was able to give a detailed account of the sexual assault. Throughout her contact with defendant, he never attempted to cover his face. Thus, complainant was not only able to identify defendant's car, but she was also able to identify defendant himself when the police brought him out of the tavern. Further, complainant's mother, O'Reilly, and Officer Tribe were able to testify concerning complainant's hysterical behavior shortly after the incident. We therefore find that due to the overwhelming evidence of defendant's guilt, any possible errors at trial could not have tainted the jurors' perceptions to the point that defendant was unable to receive a fair trial.

Finally, defendant contends that he was entitled to a hearing regarding his fitness to stand trial. This is another issue that defendant failed to preserve for review with an objection at trial or a post-trial motion. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

■ However, the statutory presumption is that a defendant charged with a criminal offense is fit to stand trial. (Ill. Rev. Stat. 1987, ch. 38, par. 104—10.) The record gives no indication that defendant was unfit to stand trial. There is no indication that defendant was unable to comprehend the proceedings during the course of the trial. Further, the statutory entitlement to a fitness hearing while

under medication (Ill. Rev. Stat. 1987, ch. 38, par. 104—21) does not require the court to order one on its own motion.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.